273 N.J. Super. 560 (1994)
642 A.2d 1046
HARVEY WICKNER AND BONITA WICKNER. PLAINTIFFS-RESPONDENTS,
v.
AMERICAN RELIANCE INSURANCE COMPANY, DEFENDANT-APPELLANT. AND FITCHBURG MUTUAL INSURANCE COMPANIES AND JEFFREY C. SYMEONIDES, DEFENDANTS-RESPONDENTS, AND CRUM & FORSTER INSURANCE COMPANIES, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued May 3, 1994.
Decided June 6, 1994.
*561 Before Judges PRESSLER, DREIER and KLEINER.
Nicholas Kierniesky argued the cause for appellant (J.H. Greenblatt, attorney; Mr. Greenblatt and Mr. Kierniesky, on the brief).
Thomas J. Giblin argued the cause for respondents Harvey Wickner and Bonita Wickner (Giblin & Lynch, attorneys; Mr. Giblin and James J. Marchwinski, on the brief).
Methfessel & Werbel, attorneys for respondent Fitchburg Mutual Ins. Co. (Joseph W. Pender, on the brief).
No brief timely filed by respondent Jeffrey C. Symeonides.
The opinion of the court was delivered by DREIER, J.A.D.
Defendant American Reliance Insurance Company appeals from a summary judgment entered in favor of plaintiffs, Harvey and Bonita Wickner, for defense costs incurred in a separate personal injury action. The trial judge certified this judgment as final, notwithstanding the pendency of other claims. R. 4:42-2. Plaintiffs brought this declaratory judgment action against defendants Crum & Forster Insurance Companies (an excess carrier), Fitchburg Mutual Insurance Company (the insurer of 328 Warren Street, Harrison, during the time plaintiffs owned the property), American Reliance Insurance Company (plaintiffs' homeowner's insurer), and Jeffrey C. Symeonides (a Fitchburg agent) for failure to afford defense counsel when plaintiffs were sued by Marina Avila.
On appeal, American Reliance asserts that the judge erred in construing the insurance policy to afford coverage, notwithstanding the exclusions of the policy, and that the declaratory judgment action was barred by application of the entire controversy doctrine. *562 We agree with the insurer's arguments that the exclusions of its policy preclude this claim, and therefore do not reach the entire controversy doctrine issue.
On May 10, 1984, plaintiffs purchased a three-family residence at 328 Warren Street in Harrison. Contemporaneous with the purchase of the property, plaintiffs obtained liability insurance coverage for the property from Fitchburg through Symeonides, a Fitchburg agent. Plaintiffs resided at 620 Bergen Street in Harrison, and never moved into the Warren Street property, as may have been originally intended. They rented out the Warren Street property, and in 1985 reported $11,800 in rental income on their tax returns.
Plaintiffs obtained insurance coverage from another company, American Reliance, for their "residence premises," listed on the declaration sheet as 620 Bergen Street, Harrison, and for the rear of 74 First Street, Keyport, presumably a vacation residence. The policy covered one year, from June 12, 1985, to June 12, 1986. Included in the policy is section two, titled "Home and Personal Liability Coverage," providing personal liability protection up to $100,000. The applicable provision states:
Coverage (E)  Personal Liability to Others
This provides for payment on behalf of an insured of sums which the insured becomes legally obligated to pay as damages because of loss covered here. We agree to pay such sums that arise out of bodily injury or property damage caused by an occurrence.
We will provide a defense by counsel of our choice in a suit against an insured seeking damages on account of a loss covered by this agreement.
On July 11, 1985, plaintiffs sold the Warren Street property. On August 5, 1985, less than a month after the sale by plaintiffs, Avila allegedly tripped and fell on the sidewalk abutting 328 Warren Street and sustained serious injuries. On August 4, 1987 she filed a lawsuit against the new owners of 328 Warren Street, as well as plaintiffs as former owners of the property, and the original builder. Avila claimed that her injuries were the result of *563 negligent construction, maintenance, and repair of the sidewalk abutting 328 Warren Street.
Plaintiffs requested that Fitchburg and American Reliance provide defense counsel and coverage for the Avila case. American Reliance, plaintiffs' homeowner's carrier, refused, stating that "none of the policies that American Reliance wrote for the Wickners covered the loss location 328 Warren Street. We must, therefore, formally deny any coverage ... due to the fact that this was not a primary residence, in an insured location, or a property that was added within thirty days of purchase." As the Fitchburg policy had been canceled prior to the Avila fall, it also denied coverage, so plaintiffs were forced to retain their own attorney.
Avila's slip-and-fall case was litigated in May 1989, and plaintiffs, the builder of the property, and the present owners prevailed. Avila successfully appealed the verdict and we remanded for a new trial. Before the second trial, plaintiffs were voluntarily dismissed from the case. Their expenditures for legal costs, however, have exceeded $143,000.
Plaintiffs filed a declaratory judgment action against Crum & Forster, Fitchburg, and American Reliance, asserting that all three insurance companies had wrongfully denied coverage for the occurrence alleged by Avila and that all had been required to provide plaintiffs with a defense in that lawsuit. In an amended complaint, plaintiffs added Symeonides, a Fitchburg insurance agent, as a defendant, asserting that he had negligently, intentionally, or wrongfully canceled the Fitchburg policy and misrepresented plaintiffs' intent. Plaintiffs' case against Fitchburg and Symeonides went to trial and resulted in a jury verdict in favor of both defendants.
After cross-motions by all parties in the declaratory judgment action, the trial judge entered an order granting summary judgment to plaintiffs against the homeowner's carrier, American Reliance, and denying the other motions and cross-motions for *564 summary judgment.[1] The judge also denied American Reliance's motions for reconsideration, clarification and a stay.
The judge signed a final order for judgment against American Reliance, for $65,453.04 for failure to provide coverage in the Avila lawsuit and $77,855.98 for costs, counsel fees, and interest in this suit to enforce liability coverage and for legal assistance which had been wrongfully denied. The order states: "ORDERED that the findings of liability as recited in this Court's Order of April 3, 1992 and the fixing of attorney's fees shall be certified as a Final Judgment against American Reliance Insurance Company pursuant to Rule 4:42-2."[2]
At oral argument on April 3, 1992, American Reliance claimed that two exclusions in the insurance policy, numbers 3 and 5 denied coverage to plaintiff. They read:
Exclusions  we are not liable for any loss:
....
3. arising out of any business activities of an insured, except:
a. activities which are not undertaken in relation to business and which are activities otherwise covered here;
b. those within the term business pursuits; or
c. the part time activities of an insured who is a student under the age of 18;

*565 ....
5. arising out of a premises owned, rented, or controlled by an insured, other than an insured premises  but this does not apply to bodily injury to a residence employee arising out of and in the course of employment by an insured....
In short, American Reliance maintained it did not have to afford coverage or provide defense counsel because the alleged injuries were losses "arising out of ... business activities of the insured" or losses "arising out of premises owned by the insured, other than an insured premises."
On April 3, 1992, the trial judge determined that neither exclusion was applicable and granted plaintiffs' summary judgment motion against American Reliance. He stated that plaintiffs' liability in the Avila case had been based on a separate basis, namely that imposed under the holding in Cogliati v. Ecco High Frequency Corp., 92 N.J. 402, 456 A.2d 524 (1983) (holding that there is a cause of action for persons injured due to a hazard that was created, or left uncorrected, by a previous owner of a property). The judge thus found American Reliance's policy covered plaintiffs under the personal liability section of the policy.
Addressing whether the non-listed premises exclusion applied, the judge focused on whether the Warren Street property was "premises owned by an insured" and on the meaning of the word "owned." He stated: "Different languages have different structures. There are present participles, there are past participles. Some languages have perspective aspects to their verbs. What does owned mean? That's a defect in the English language." Thus, the judge questioned whether "owned" property included property both presently and previously owned.
Addressing the business activities exclusion, the judge held that this was not an accident arising out of business activities or business pursuits because, having already sold the property, plaintiffs were no longer pursuing a business on the premises. The judge stated: "We have here one of those general legal obligations created by law, not created by ownership during the policy period." He then turned to the reasonable expectations of the insured and concluded that an insured would believe that liability *566 insurance covers "those things that are implied by law  not necessarily by his own activities or by his own design." The judge determined that both the business activities and owned premises exclusions "do not refer to liabilities imposed by law or occurrences happening with[in] the policy period." "These liabilities ... do not arise out of presently owned properties which are what the insurance company expects to be listed. They arise by operation of law, and I think liability coverage has to be broad enough to cover those things that are implied by operation of law."

I
American Reliance contends that the non-listed premises exclusion precludes coverage under its insurance policy. We agree. This American Reliance policy, like most homeowner's policies, provides liability coverage for payment "of sums which the insured becomes legally obligated to pay as damages ... that arise out of bodily injury ... caused by an occurrence." "Occurrence" is listed in the policy glossary as "an accident, including continuous or repeated exposure to substantially similar conditions."
Coverage for injuries caused by occurrences is not limited to occurrences on the insured premises. See, e.g., Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 169-70, 607 A.2d 1255 (1992) (where the plaintiff was sued by her child's teacher for comments the plaintiff made before the school board, and there was no suggestion that the occurrence had to occur on the insured premises); Horesh v. State Farm Fire & Casualty Co., 265 N.J. Super. 32, 34-35, 625 A.2d 541 (App.Div. 1993) (where a husband brought an action to recover for injuries to his infant son, which occurred in a store, the defendants filed a third-party complaint against the wife for contribution and indemnification, and the wife properly requested that the family's homeowner's insurer defend her). Thus, there is coverage here under the American Reliance policy unless an exclusion applies.
The non-listed premises exclusion provides:

*567 Exclusions  we are not liable for any loss:
....
5. arising out of a premises owned, rented, or controlled by an insured, other than an insured premises  but this does not apply to bodily injury to a residence employee arising out of and in the course of employment by an insured....
American Reliance contends that liability for non-disclosure of a latent defect in property transferred to another is a potential loss "arising out of a premises owned" by plaintiffs, and if the property is not listed as an insured premises under the policy, the non-ownership is the factor that denies coverage because of this exclusionary clause in the policy.
Sinopoli v. The North River Ins. Co., 244 N.J. Super. 245, 581 A.2d 1368 (App.Div. 1990), certif. denied, 127 N.J. 325, 604 A.2d 600 (1991) is an example of the application of this exclusion. In Sinopoli, a child was injured when he wandered from the public area of a shoe store into a non-public room and came in contact with sulfuric acid. Id. at 248, 581 A.2d 1368. The owners of the shoe store sought to compel their residential insurance carrier to cover the accident because the claim for injuries was in excess of the limit of the commercial liability policy for the store. Id. at 248-49, 581 A.2d 1368. We interpreted the residential policy's non-listed property exclusion as precluding coverage because the policy insured the residential home, not the shoe store building. Id. at 253, 581 A.2d 1368. Because the complaint grounded liability on allegations that the defendant was the owner, or had control of, the store and maintained the premises in a negligent manner, the allegations mirrored the language of the exclusion. Id. at 253, 581 A.2d 1368.
Here, the only difference is that plaintiff no longer owned the Warren Street property at the time of the accident. The question here is therefore whether the exclusion applies to property formerly owned by an insured and not listed as insured premises on the policy. The answer would be simple if this policy included an "alienated premises" clause, i.e., an express exclusion concerning losses arising from property previously owned by an insured. See Reliance Ins. Co. v. Armstrong World Indus., 265 N.J. Super. 148, *568 152, 625 A.2d 601 (Law Div. 1993) ("The inclusion within a policy of liability insurance of an exclusion for `premises alienated by the named insured' is designed to extend the exclusion to claims by subsequent owners of property previously owned by an insured.") Plaintiffs contend that since the non-listed premises exclusion fails to contain an express "alienated premises" clause, the non-listed premises exclusion, standing alone, does not encompass alienated property.
Plaintiffs find support in Hatco Corp. v. W.R. Grace & Co., 801 F. Supp. 1334, 1359 (D.N.J. 1992). There the court explained that "insurance companies can and routinely do include alienated premises clauses in insurance contracts." See also Reliance Insurance Co. v. Armstrong World Indust., supra, 265 N.J. Super. at 152, 625 A.2d 601. Thus the judge in Hatco Corp. concluded that "the reasonable expectations of the parties to a contract that does not contain such a provision is that the owned-property exclusions do not bar coverage for damage that occurs on alienated property." Ibid. We disagree with this premise. We do not assume that insureds are familiar with specific exclusionary language employed by the carriers, or that insureds who have demonstrated no special expertise or sophistication in the area of insurance law or coverage have relied upon the absence of as esoteric a provision as an alienated property clause.
The law is settled that the language of liability insurance policies should be construed liberally in favor of the insured and strictly against the insurer. Sandler v. New Jersey Realty Title Ins. Co., 36 N.J. 471, 479, 178 A.2d 1 (1962). The reasonable expectation of the insured should be accorded so far as the language of the policy permits. Allen v. Metropolitan Life Ins. Co., 44 N.J. 294, 305, 208 A.2d 638 (1965). Ambiguities in an insurance policy should be resolved against the insurance company. Meier v. New Jersey Life Ins. Co., 101 N.J. 597, 612-13, 503 A.2d 862 (1986); Sparks v. St. Paul Ins. Co., 100 N.J. 325, 336, 495 A.2d 406 (1985). Where, however, the terms of an insurance policy are clear, the court should enforce the policy as written. *569 State v. Signo Trading Int'l, Inc., 130 N.J. 51, 62-63, 612 A.2d 932 (1992). The question is whether in the absence of clarifying language, the non-listed property exclusion opened this policy to an ambiguity relating to coverage of Warren Street property, even after its sale. It is clear to us that this claim, whether relative to previously owned or presently owned property falls within this exclusion. The potential loss arose out of the fact that these premises had been "owned" by plaintiffs, notwithstanding that at the time of the alleged injury, plaintiffs no longer owned the Warren Street property.

II
American Reliance also asserts that the business activities exclusion bars coverage because plaintiffs used the Warren Street property as a rental property. We also agree with this defense.
The exclusion states:
Exclusions  we are not liable for any loss:
....
3. arising out of any business activities of an insured, except:
a. activities which are not undertaken in relation to business and which are activities otherwise covered here;
b. those within the term business pursuits; or
c. the part time activities of an insured who is a student under the age of 18;
Included in the glossary in the policy is the following definition of "business":
Business includes
1. a trade, profession, or other occupation (including farming) and use of any premises for such purposes; and
2. the rental or holding for rental of the whole or any portion of the insured premises by an insured, other than the following uses of a private residence:
a. The occasional rental or holding for rental of the residence premises for dwelling purposes;
b. the rental or holding for rental of a portion of the residence premises for dwelling purposes, unless for the accommodation of more than two lodgers; or

*570 c. the rental or holding for rental of a portion of the residence premises as an office, school, studio, or private garage.
The "business pursuits" exception from the exclusion is defined as:
1. occupation as a clerical office employee, including executives whose activities are limited to clerical office work; and
2. occupation as a sales person, cashier or messenger  but not those engaged in installation, demonstration, or servicing.
However, this insurance does not apply to:
....
3. Bodily injury or property damage arising from any business owned or financially controlled by the insured....
The judge held that the Avila claim was not for an accident arising out of business activities or business pursuits because plaintiffs were no longer pursuing a business on the premises. He concluded that, instead, this situation was "liability arising out of [Cogliati]."
American Reliance correctly contends that it is undisputed that plaintiffs used 328 Warren Street as a rental enterprise, which is specifically defined in the policy as a business activity.[3]
It is true that plaintiffs were not still using the Warren Street property as a business property at the time of Avila's accident. However, as Avila alleged, the injury occurred because plaintiffs failed to repair the sidewalk or disclose the latent defects when they owned the property as a business asset. Rental of this property constituted "business" under the policy definition. Therefore, plaintiffs' alleged failure to act occurred when the property was used as a business. Under the business activities exclusion, Avila's alleged injury was a bodily injury "arising out of any business activities of an insured." It is reasonable to assume that an insured would believe that his or her business insurance, and not homeowners insurance, would cover injuries arising out of *571 such business activities or pursuits. This exclusion bars this claim under the American Reliance policy.

III
In this case we see anomalous results of the piecemeal disposition of plaintiffs' claims. Plaintiffs were covered by insurance, procured by a broker, for their investment property and their home (with extended liability coverage), and an umbrella policy to protect against excess recoveries. They were represented by counsel when they sold the rental property. With all of this protection, they are now saddled with over $140,000 in legal costs for a claim on which they prevailed. One might imagine that the Fitchburg policy would have a clause to cover occurrences after the transfer which implicated plaintiffs' alleged acts while they were owners. It did not. Alternatively, the broker or attorney who did not advise plaintiffs to retain the Fitchburg coverage for a reasonable period following the closing might be liable. No claim was made against the attorney, and the broker was found blameless, notwithstanding the fact that Cogliati had been decided years before plaintiffs sold the Warren Street property. Plaintiffs had put themselves in the hands of those whom they thought were competent professionals and secured what appeared to be adequate insurance, yet they suffered this loss.
Had a single judge or jury considered all of the claims, perhaps the result might have been different. On the narrow aspect of this case now before us, however, we cannot pound the square peg of liability into the round hole of the American Reliance policy. We can only by this opinion again alert the Bar and through it the real estate industry to the potential liability imposed by Cogliati upon former owners who have not extended their coverage for a reasonable period following the transfer of title.[4]
*572 We can only pass upon the case we have before us. While we appreciate that the trial judge was attempting to protect the plaintiffs from a complete lack of coverage, the policy before us in two clear exclusions precluded coverage for this claim. We are therefore constrained to reverse the judgment for plaintiffs and remand for the entry of judgment in favor of American Reliance Insurance Company.
NOTES
[1] Crum & Forster again moved for summary judgment dismissing plaintiffs' complaint against it, and the judge granted the motion, holding that Crum & Forster was an excess carrier and underlying coverage had already been found. In view of our reversal of the judgment against American Reliance, plaintiffs may move to reinstate this aspect of the complaint.
[2] Plaintiffs claim that our order of January 21, 1993, denying American Reliance's motion to expand the scope of the appeal to include the April 3, 1992 partial summary judgment order and a later reconsideration order bars American Reliance from proceeding with its exclusionary arguments. They claim these arguments relate to the April 3, 1992 order where the judge found coverage under the American Reliance policy, and not the November 18, 1992 order where he actually entered final judgment against American Reliance. The November 18, 1992, order, however, incorporates the findings of liability, and the judge correctly certified that order as final pursuant to R. 4:42-2. Therefore, based on the language of the November 18, 1992 order, American Reliance may argue on appeal that liability was improperly found.
[3] As further support for its claim that this exclusion governs, American Reliance points to the Hotel and Multiple Dwelling Law, N.J.S.A. 55:13A-1 to -28, where, under N.J.S.A. 55:13A-3(k), properties which consist of three or more residence units for persons living independently are defined as "multiple dwellings."
[4] Perhaps the remedy lies with the Legislature. Insurance policies should not be traps for the unwary. For an appropriate premium, coverage might be required to be extended to cover Cogliati-type claims against former owners.