661 A.2d 1256

HARVEY WICKNER AND BONITA WICKNER, PLAINTIFFS–AP-PELLANTS, v. AMERICAN RELIANCE INSURANCE COMPA-NY, DEFENDANT–RESPONDENT, AND FITCHBURG MUTUAL INSURANCE COMPANIES, JEFFREY C. SYMEONIDES AND CRUM & FORSTER INSURANCE COMPANIES, DEFEN-DANTS.

Argued February 27, 1995—Decided July 31, 1995.

*Thomas J. Giblin* argued the cause for appellants (*Giblin & Lynch*, attorneys; *Mr. Giblin* and *James J. Marchwinski*, on the briefs).

*Nicholas Kierniesky* argued the cause for respondent (*Jay H. Greenblatt*, attorney; *Mr. Kierniesky* and *Mr. Greenblatt*, on the brief).

PER CURIAM.

Plaintiffs, Harvey and Bonita Wickner, resided at a home at 620 Bergen Street in Harrison, New Jersey. They also owned a three-family residence at 328 Warren Street in Harrison, from May, 19, 1984 to July 11, 1985, which they rented. Less than one month after selling the Warren Street property, Marina Avila allegedly tripped and fell on the sidewalk abutting the three-family residence, sustaining serious injuries. Avila sued the new

owners of the premises for negligent construction, maintenance, and repair of the sidewalk. Avila also included the Wickners as previous owners of the property, as well as the builders of the property, as defendants in the suit.

The Wickners canceled their insurance policy on the Warren Street property after the conveyance of title. They requested coverage from their homeowners' insurance provider, defendant, American Reliance Insurance Company (American Reliance), under a general liability-coverage provision included in the policy on their Bergen Street residence. American Reliance refused to cover the liability on the basis of two exclusionary provisions in the policy, which, respectively, excluded liability coverage for bodily injury or property damages arising out of property owned but unlisted in the policy and out of business activities of the insured. The Wickners were thus forced to finance the defense of the *Avila* action on their own.

The Wickners were eventually dismissed from that suit, but not until after they had incurred $143,000 in legal expenses. Plaintiffs thereafter instituted this action against American Reliance, asserting that it had wrongfully denied coverage for the occurrence alleged by Avila, and had wrongfully failed to provide plaintiffs with a defense in that lawsuit. Plaintiffs contend that neither exclusionary provision relied on by American Reliance applies to bar coverage because Ms. Avila's accident, which triggered the Wickners' liability, occurred after they had sold the property.

The trial court granted the plaintiffs' summary judgment motion against American Reliance, determining that American Reliance's policy covered plaintiffs under the personal liability section of the policy, and that neither exclusion was applicable. It entered judgment against American Reliance for $65,453.04 for failure to provide coverage in the *Avila* lawsuit and $77,855.98 for costs, counsel fees, and interest in this suit to enforce liability coverage and for legal assistance that had been wrongfully denied.

On appeal the Appellate Division reversed the trial court's summary judgment and remanded the case to the Law Division

for entry of judgment in favor of American Reliance. 273 *N.J.Super.* 560, 572, 642 *A*.2d 1046 (1994).

We now affirm the judgment of the Appellate Division substantially for the reasons expressed in the opinion of Judge Dreier.

I

The exclusionary provisions relating to unlisted premises and business activities, contained in the policy, provide that American Reliance is not liable for any loss for bodily injury or property damage "arising out of any business activities of an insured," [1] or "arising out of a premises owned, rented, or controlled by an insured, other than an insured premises." [2] The policy defines business as, among other things, "the rental or holding for rental of the whole or any portion of the insured premises by the insured."

American Reliance maintained that it did not have to afford coverage or provide defense counsel because the alleged injuries were losses "arising out of ... business activities of the insured" or losses "arising out of premises owned by the insured, other than an insured premises." The trial court, however, found the temporal meaning of the term "owned" in the unlisted premises exclusion was ambiguous in light of the basis for liability imposed under this Court's holding in *Cogliati v. Ecco High Frequency Corp.*, 92 *N.J.* 402, 456 *A*.2d 524 (1983). It also determined that the business activities exclusion was inapplicable, reasoning that the accident did not arise out of business activities or business

---

[1] Exceptions to this "business activities" exclusion are:

    a.   activities which are not undertaken in relation to business and which are activities otherwise covered here;

    b.   those within the term business pursuits; or

    c.   the part time activities of an insured who is a student under the age of 18;

[2] This exclusion "does not apply to bodily injury to a residence employee arising out of and in the course of employment by an insured."

pursuits because, having already sold the property, plaintiffs were no longer pursuing a business on the premises.

The Appellate Division rejected the reasoning that the unlisted premises exclusion was ambiguous in the context of a *Cogliati* claim. *Id.* at 569, 642 *A*.2d 1046. Rather the court found that the exclusion applied to property owned at the time of the incident, as well as property owned prior to the incident, notwithstanding the absence of an express "alienated premises" clause. *Ibid.*; *see Reliance Ins. Co. v. Armstrong World Indus.*, 265 *N.J.Super.* 148, 152, 625 *A*.2d 601 (Law Div.1993) ("The inclusion within a policy of liability insurance of an exclusion for 'premises alienated by the named insured' is designed to extend the exclusion to claims by subsequent owners of property previously owned by the insured."). We agree with the appellate court's conclusion that the exclusion provision applicable to owned but unlisted property was clear and unambiguous.

In *Cogliati*, we held that a "predecessor in title who has created or maintained the dangerous sidewalk condition should remain liable to the injured pedestrian irrespective of the fact that the property has been conveyed." 92 *N.J.* at 412, 456 *A*.2d 524. Thus, the liability recognized in *Cogliati* is one that inheres in the predecessor in title's prior ownership of the property. Although the prior owner might ultimately be found not to have created or maintained the dangerous condition resulting in injury, the fact and incidents of ownership, the ability to have controlled the property, give rise to the cause of action. To be sure, the negligence charged here, the creation, maintenance, and failure to repair a dangerous condition, involves conduct that would have occurred during the period of ownership and would reflect the incidents of such ownership.

The dissent's conclusion that the insurance policy is ambiguous is derived from its interpretation of the duty created by our *Cogliati* decision. The dissent would read *Cogliati* as imposing on a predecessor in title a continuing liability for negligent maintenance of a sidewalk that may have occurred either during the

period of ownership or after sale. Thus, it concludes that "[b]e-cause ... the plaintiff's alleged negligence may ... have occurred after the sale, the unlisted premises exclusion does not clearly and unambiguously exclude coverage." *Post* at 406, 661 *A.2d* at 1263. The thrust of *Cogliati,* however, is its recognition of a continuing responsibility for either the creation or maintenance of a danger-ous condition that occurred *during* ownership and persists after the owner has sold the property. 92 *N.J.* at 412, 456 *A.2d* 524. Contrary to the dissent's assertion, the *Cogliati* Court did not impose a duty on the predecessor in title to maintain the property free from dangerous conditions that are created after sale of the property. Thus, because the post-transfer duty recognized in *Cogliati* arises from the predecessor in title's prior ownership, it does not introduce an ambiguity in the exclusions and their application to the facts of this case.

The unlisted premises exclusion contained in the American Reliance policy is intended to preclude from coverage injuries or property damage arising out of property that is owned by the insured, but unlisted in the policy. The reason for the exclusion is that the unlisted property and the risks associated with it have not been included in the underwriting consideration or the determina-tion of the cost of the policy. Such property can be insured either through the purchase of separate insurance for that property or by its listing and inclusion under the coverage of the existing policy with a commensurate premium charge. It would be illogical and anomalous to assume that an insurance policy precluding coverage for personal injuries or property damage arising out of property owned by an insured but unlisted in the policy could be interpreted to cover such claims simply because the insured had sold the property, and hence did not "own" the property at the time of the occurrence or accident giving rise to liability and a claim of insurance coverage. Although the ownership might have terminated prior to such occurrence or accident, the ownership of the premises and the insured's conduct as an incident of that ownership, nonetheless gave rise to the potential loss. Thus, if

that owned property is not listed in the policy, it is excluded from coverage under the policy.

We note further that plaintiffs rely on *Hatco Corp. v. W.R. Grace & Co.*, 801 *F.Supp.* 1334 (D.N.J.1992), for the proposition that the unlisted premises exclusion does not apply to property no longer owned by the insured in the absence of an express alienation clause. An alienation clause deals expressly with property that was owned when the insurance policy went into effect but was sold or alienated during the term of the policy. The clause usually provides that such alienated property will not be covered with respect to liability arising from an occurrence after the property was alienated. In *Hatco,* the court held that because "insurance companies can and routinely do include alienated premises clauses in insurance contracts, the reasonable expectations of the parties to a[n insurance] contract that does not contain such a provision is that the owned-property exclusions do not bar coverage for damage that occurs on alienated premises." *Id.* at 1359. The record simply does not support the conclusion that the reasonable expectations of parties to an insurance contract will have been in any way influenced by the omission of an alienated property clause from the insurance policy.

If the policy exclusions were found not to apply in this context, than we would be providing insureds with more insurance protection for having sold their property than would be attributable to them during the time they owned that property. That interpretation can be neither derived from the language of the policy, reasonably inferred from the intentions of the parties, nor imputed as their reasonable expectations.

Similar reasoning applies to the business activities exclusion. The Appellate Division held that the "business activities" exclusion of the American Reliance policy was applicable, even though the Wickners had not been pursuing a business at the Warren Street property at the time of the occurrence, because the injury had occurred as a result of plaintiffs' "fail[ure] to repair the sidewalk or disclose the latent defects when they owned the property as a

business asset." *Id.* at 570, 642 *A.*2d 1046. The Appellate Division reasoned that

[r']ental of this property constituted "business" under the policy definition. Therefore, plaintiff's alleged failure to act occurred when the property in question was used as a business. Under the business activities exclusion, Avila's alleged injury was a bodily injury "arising out of any business activities of an insured." .It is reasonable to assume that an insured would believe that his or her business insurance, and not homeowners insurance, would cover injuries arising out of such business activities or pursuits.

*[Ibid.]*

We hold that the insured's conduct creating the dangerous condition, rather than the insured's status at the time of the occurrence, is of primary significance. *See, e.g., Indus. Indem. Co. v. Goettl,* 138 *Ariz.* 315, 318, 674 *P.*2d 869, 872 (App.1983) (holding that business pursuits exclusion pertained to former warehouse owner's liability for injuries sustained when warehouse roof fell in, injuring an employee, even though owner had sold the warehouse prior to occurrence, and stating "that the 'business pursuits' exclusion contained in Great American's homeowners policy precludes coverage for injuries arising out of a business pursuit regardless of when the insured engaged in such activity").

American Reliance and the Wickners contracted specifically for homeowner insurance and coverage of specific personal risks associated with a homeowner's activities. The inclusion in the policy of a business activities exclusion indicates that the policy was not intended to provide the more expansive coverage for risks associated with business or commercial activity. Because the insurer should be liable only for risks bargained for in the insurance contract, coverage for injuries arising out of business or commercial activities should be precluded.

Moreover, the Wickners' ownership of the Warren Street property was clearly a business pursuit. Ms. Avila's complaint alleged negligent construction, maintenance and repair of the sidewalk, allegations that involve specific acts by the Wickners while they had been engaged in the renting of the apartments for profit. Significantly, Ms. Avila's claim against the Wickners for

maintaining a dangerous condition on the sidewalk abutting their property is cognizable only because of the commercial nature of the Wickners' ownership. *See Stewart v. 104 Wallace St., Inc.,* 87 *N.J.* 146, 157, 432 *A.*2d 881 (1981) (holding that commercial landowners are responsible for maintaining public sidewalks abutting their property in reasonably good condition and are liable to pedestrians injured as a result of their failure to do so). Thus, Ms. Avila's injury, allegedly resulting from those acts, arose out of the Wickners' business activities, and hence, constitutes conduct excluded from coverage.

## II

The Appellate Division appropriately noted the quandary and apparent unfairness to the insureds in this case:

> [The Wickners] were covered by insurance, procured by a broker, for their investment property and their home (along with extended liability coverage), and an umbrella policy to protect against excess recoveries. They were represented by counsel when they sold the rental property. [Yet, w]ith all of this protection, they are now saddled with over $140,000 in legal costs for a claim on which they prevailed.
>
> [273 *N.J.Super.* at 571, 642 *A.*2d 1046.]

Yet, as the Appellate Division stated, "[W]e cannot pound the square peg of liability into the round hole of the American Reliance policy." *Ibid.* With this affirmance, we can only adjure the insurance industry together with insureds and their advisors to devise an insurance-policy provision that would provide coverage for alienated property to protect insureds against the loss suffered here by plaintiffs.

STEIN, J., dissenting.

In *Cogliati v. Ecco High Frequency Corp.,* 92 *N.J.* 402, 412, 456 *A.*2d 524 (1983), the Court held that a "predecessor in title who has created or maintained [a] dangerous sidewalk condition should remain liable to [an] injured pedestrian irrespective of the fact that the property has been conveyed." This appeal raises insurance issues that result from that decision. The majority finds that

two exclusionary provisions in plaintiffs' homeowner's policy clearly and unambiguously bar coverage of a *Cogliati*-type claim. In the context of our decision in *Cogliati*, I conclude that those exclusions are sufficiently ambiguous to impose on the insurer the duty to provide a defense to the suit against plaintiffs arising from an injury that occurred on the sidewalk abutting the property they formerly had owned.

I

Plaintiffs, Harvey and Bonita Wickner, owned the Warren Street property, a three-family residence, from May 10, 1984, to July 11, 1985. During their period of ownership plaintiffs rented the apartments to tenants. That property was insured under a policy written by Fitchburg Mutual Insurance Company (Fitchburg), which was in effect during the period of ownership, but was cancelled after the property was sold. Maria Avila allegedly tripped and fell on the sidewalk abutting the Warren Street property on August 5, 1985, and thereafter sued plaintiffs based on the liability imposed by *Cogliati*. After extensive litigation, plaintiffs eventually were voluntarily dismissed from the *Avila* suit. At the time of Avila's alleged fall, plaintiffs were insured under a homeowner's policy issued by defendant, American Reliance Insurance Company (American Reliance).

Plaintiffs requested that American Reliance and Fitchburg provide coverage and a defense for the *Avila* suit, but both companies refused. Fitchburg denied coverage because Avila's alleged fall had occurred after the policy had been cancelled. Fitchburg and its agent ultimately prevailed in a coverage action brought by plaintiffs. American Reliance denied coverage based on two exclusionary provisions in its policy. One provision excluded coverage for bodily injury or property damage arising out of property *owned* by the insured but unlisted in the policy; the other excluded coverage for bodily injury or property damage arising out of *business activities* of the insured. The trial court awarded plaintiffs summary judgment, reasoning that American Reliance

should have provided liability coverage and a defense for the *Avila* litigation because the exclusionary provisions were ambiguous in light of *Cogliati*. However, because plaintiffs had been dismissed from the *Avila* litigation, their damages amounted to approximately $143,000, consisting solely of attorney's fees and costs accumulated in defending the *Avila* action and in bringing suit against American Reliance. The Appellate Division reversed, concluding that "two clear exclusions precluded coverage for this claim." 273 *N.J.Super.* 560, 572, 642 *A.*2d 1046 (1994). The Court now affirms substantially for the reasons expressed by the Appellate Division.

Because plaintiffs were dismissed from the *Avila* litigation, the only issue before the Court is whether American Reliance had a duty to defend plaintiffs.

## II

Whether an insurer has a duty to defend an action against an insured is evaluated by comparing the allegations in the complaint with the language of the policy. *Voorhees v. Preferred Mut. Ins. Co.*, 128 *N.J.* 165, 173, 607 *A.*2d 1255 (1992); *Hofing v. CNA Ins. Cos.*, 247 *N.J.Super.* 82, 88, 588 *A.*2d 864 (App.Div.1991). The duty to defend arises if the complaint states a claim that constitutes a risk falling within the purview of the policy language. *Voorhees, supra,* 128 *N.J.* at 173, 607 *A.*2d 1255; *Hofing, supra,* 247 *N.J.Super.* at 88, 588 *A.*2d 864; *Danek v. Hommer,* 28 *N.J.Super.* 68, 77, 100 *A.*2d 198 (App.Div.1953), *aff'd o.b.,* 15 *N.J.* 573, 105 *A.*2d 677 (1954). The duty to defend is assessed without considering the merits of the complaint, and therefore is not abrogated because the cause of action cannot be maintained against the insured in law or in fact, or is groundless, false, or fraudulent. *John's Cocktail Lounge, Inc. v. North River Ins. Co.,* 235 *N.J. Super.* 536, 541, 563 *A.*2d 473 (App.Div.1989); *Danek, supra,* 28 *N.J.Super.* at 77, 100 *A.*2d 198. Accordingly, the duty of an insurer to defend is broader than its obligation to indemnify. *Hofing, supra,* 247 *N.J.Super.* at 88, 588 *A.*2d 864; *Lumbermen's Mut. Casualty Co. v. United Servs. Auto. Ass'n,* 218 *N.J.Super.*

492, 497, 528 A.2d 64 (App.Div.1987); *Hartford Ins. Group v. Marson Constr. Corp.*, 186 *N.J.Super.* 253, 257, 452 A.2d 473 (App.Div.1982), *certif. denied*, 93 *N.J.* 247, 460 A.2d 656 (1983). Moreover, if the allegations of a complaint are ambiguous, doubts about coverage are resolved in favor of the insured. *Voorhees, supra,* 128 *N.J.* at 173, 607 A.2d 1255; *Central Nat'l Ins. Co. v. Utica Nat'l Ins. Group,* 232 *N.J.Super.* 467, 470, 557 A.2d 693 (App.Div.1989).

The complaint in the *Avila* action alleged that prior to the date of Avila's alleged fall plaintiffs "were the owners" of the Warren Street property, and further alleged that plaintiffs had "constructed, maintained and repaired the public sidewalk [adjacent to the Warren Street property] in a negligent manner so as to cause, permit or allow the creation of a tripping hazard." That Avila's fall on the sidewalk abutting the Warren Street property constitutes a covered "occurrence" under the homeowner's policy, unless barred by an exclusion, is undisputed. As the Appellate Division observed, "there is coverage here under the American Reliance policy unless an exclusion applies." 273 *N.J.Super.* at 566, 642 A.2d 1046. Although the majority does not distinguish the duty to defend from the duty to indemnify, it nevertheless finds that the unlisted-premises exclusion and the business-activities exclusion in the American Reliance homeowner's policy clearly and unambiguously remove the *Avila* lawsuit from coverage. While an applicable, unambiguous exclusion relieves an insurer of its obligation to defend its insured, *Salem Group v. Oliver,* 128 *N.J.* 1, 4, 607 A.2d 138 (1992), the clarity of the exclusions in the American Reliance policy must be assessed in light of the predecessor-in-title liability imposed by *Cogliati,* the basis of Avila's action against plaintiffs. If the complaint asserts a "potentially-coverable occurrence," *Voorhees, supra,* 128 *N.J.* at 180, 607 A.2d 1255, the duty to defend is triggered.

The Court in *Cogliati* held:

A pedestrian who establishes that any prior owner of the property negligently maintained the sidewalk and that that negligence was a proximate cause of the accident and ensuing injuries will be entitled to recovery from that wrongdoer.

Thus the plaintiff will have the burden of establishing that the predecessor's negligent failure to maintain the walk at a certain point in time was a substantial factor in causing the subsequent accident.

[92 *N.J.* at 414–15, 456 *A.2d* 524 (footnote omitted).]

The Court overturned an earlier rule that a seller of realty had no liability for injuries resulting from a defective pubic sidewalk abutting the premises after the purchaser had taken possession, even though the seller might have been responsible for the creation of the dangerous condition. The principle underlying that rule was that the seller "had no right to enter and repair the walk, for the property was no longer his." *Id.* at 408, 456 *A.2d* 524. The Court in *Cogliati* rejected that rationale, noting that "it is unrealistic to say that after the sale the predecessor could not have remedied the wrong, for it is extremely unlikely that the subsequent owner would not grant permission to rebuild or repair the sidewalk." *Id.* at 412, 456 *A.2d* 524. That observation can be interpreted to impose a continuing obligation on a predecessor in title to remedy, after the sale of the property, a defective condition that existed during his or her ownership. Therefore, *Cogliati* may be understood to impose liability for negligent maintenance of a sidewalk both during the period of ownership and after sale.

III

A

The unlisted-premises exclusion relied on by American Reliance states that the insurer is not liable for any loss for bodily injury or property damage "arising out of a premises owned, rented, or controlled by an insured, other than an insured premises." Pursuant to *Cogliati*, the *Avila* complaint can be read to allege negligence on the part of plaintiffs both during their ownership of the property and after its sale. The applicability of the exclusionary provision is highly questionable if the Wickners' liability arises out of negligent maintenance of the sidewalk after the property was no longer owned or controlled by them. That post-transfer duty arises not from ownership—the property is no longer "owned"—but from the legal principle adopted by this Court in *Cogliati*,

which is based on *prior* ownership. Because the occurrence took place after the premises had been sold, and the plaintiffs' alleged negligence may also have occurred after the sale, the unlisted-premises exclusion does not clearly and unambiguously exclude coverage.

However, whether the complaint is viewed as alleging negligence during ownership or after sale, the *Avila* lawsuit, which relies on *Cogliati* liability, can generally be understood to derive from plaintiffs' *prior* ownership of the Warren Street property. The insurance industry is fully aware of the distinction between liability arising out of current ownership and liability arising out of prior ownership. The Appellate Division noted that fact when it stated that resolution of this dispute "would be simple if this policy included an 'alienated premises' clause, *i.e.,* an express exclusion concerning losses arising from property previously owned by an insured." 273 *N.J.Super.* at 567, 642 *A.*2d 1046.

In *Hatco Corp. v. W.R. Grace & Co.,* 801 *F.Supp.* 1334 (D.N.J. 1992), the court held that "[g]iven that insurance companies can and routinely do include alienated premises clauses in insurance contracts ... the reasonable expectations of the parties to a contract that does not contain such a provision is that the owned-property exclusions do not bar coverage for damage that occurs on alienated property." *Id.* at 1359 (footnote omitted). The Appellate Division rejected that reasoning because it refused to "assume that insureds are familiar with specific exclusionary language employed by the carriers, or that insureds who have demonstrated no special expertise or sophistication in the area of insurance law or coverage have relied upon the absence of as esoteric a provision as an alienated property clause." 273 *N.J.Super.* at 568, 642 *A.*2d 1046. Similarly, the majority reasons that the record fails to "support the conclusion that the reasonable expectations of parties to an insurance contract will have been in any way influenced by the omission of an alienated property clause from the insurance policy." *Ante* at 399, 661 *A.*2d at 1259.

In my view, the absence of that widely used clause, which would have clearly resolved the disputed issue in this case, provides persuasive evidence that the risks associated with the alienated property were anticipated and assumed by American Reliance in writing its policy. (I note that the current Insurance Services Office (ISO) standard homeowner's policy (HO 00 03 04 91) does not contain an alienated-premises clause, unlike other types of policies, such as, for example, the current standard ISO commercial general liability policy (CG 00 01 10 93), which expressly excludes coverage for property damage to alienated premises but apparently *includes* liability coverage for such premises.) That significant difference in standard policy forms persuasively suggests that although other, less comprehensive, forms of liability policies exclude certain coverage for alienated premises, the broader coverage afforded by a homeowner's policy is written specifically to include that coverage. That analysis is consistent with the principle that in construing an insurance policy, courts consider "whether the use by the insurer of alternative or more precise language would have 'put the matter beyond reasonable question.'" *Aetna Ins. Co. v. Weiss,* 174 *N.J.Super.* 292, 296, 416 *A.*2d 426 (App.Div.) (quoting *Mazzilli v. Accident & Casualty Ins. Co.,* 35 *N.J.* 1, 7, 170 *A.*2d 800 (1961)), *certif. denied,* 85 *N.J.* 127, 425 *A.*2d 284 (1980). At the very least, the absence of an alienated-premises clause, combined with the temporal ambiguity implicit in the reference to "owned" premises, raises a substantial question about whether the policy expressly affords coverage for liability that arises out of formerly owned property. Therefore, despite the unlisted-premises exclusion, the complaint stated a potentially coverable occurrence sufficient to trigger the duty to defend.

## B

The business-activities exclusion states in part that the insurer is not liable for any loss for bodily injury or property damage "arising out of any business activities of an insured, except * * *

[for] activities [that] are not undertaken in relation to business and [that] are activities otherwise covered here." In the context of *Cogliati,* that exclusion is subject to the same temporal ambiguity as the unlisted-premises exclusion: Potential liability from the *Avila* action arose out of a *prior* business activity. Because plaintiffs were not conducting a business at the time of the occurrence, the business-activities exclusion does not clearly and unambiguously eliminate coverage.

However, even assuming that Avila's alleged fall "arose" out of plaintiffs' business activities, *cf. Hambright v. Yglesias,* 200 *N.J.Super.* 392, 395, 491 *A.*2d 768 (App.Div.1985) (holding that non-owner-occupied two-family house rented to tenants was commercial property and therefore owner was required to maintain public sidewalk in reasonably good condition), the business-activities exclusion might not apply because of the exception to that exclusion for "activities [that] are not undertaken in relation to business and [that] are activities otherwise covered here." Although the phrasing of that exception is unorthodox, that language apparently functions in a manner similar to the standard and more familiar exception to the business-activities exclusion for activities that are "ordinarily incident to nonbusiness pursuits." "Under the homeowners policy exclusion of business pursuits of an insured other than activities ordinarily incident to nonbusiness pursuits, certain acts or omissions occurring while one is generally engaged in a business pursuit are not intended to be excluded from coverage." 7A John A. Appleman, *Insurance Law & Practice* § 4501.11 (Berdal rev. ed. Supp.1994).

In *New Jersey Property Liability Guaranty Assoc. v. Brown,* 174 *N.J.Super.* 629, 417 *A.*2d 117, *certif. denied,* 85 *N.J.* 462, 427 *A.*2d 561 (1980), the Appellate Division adopted the following standard in interpreting the "ordinarily incident to non-business pursuits" exception to the business-activities exclusion:

"[The exclusionary clause] may fairly be read as saying that, as a general proposition, there will be no liability coverage with respect to an insured's 'business pursuits,' but that, as an exception to this broad rule, coverage will be extended to liability [that] arises, even though connected in some causal manner with the

insured's 'business pursuits,' out of an act or omission that is ordinarily not associated with or related to the insured's business pursuits. In other words, to give any meaning at all to the excepting clause, the policy must be read to extend coverage to certain acts [or] omissions [that] are not, by their very nature, tainted by being associated with an insured's business pursuits, but [that], nevertheless, with respect to the insured's potential liability arising therefrom, may have been causally related to such business pursuits."

[*Id.* at 633, 417 *A.*2d 117 (quoting *Gulf Ins. Co. v. Tilley,* 280 *F. Supp.* 60, 64–65 (N.D.Ind.1967), *aff'd,* 393 *F.*2d 119 (7th Cir.1968)).]

In *Brown,* a bail bondsman, while in his office, accidentally shot a friend, who had paid him a social visit, with a gun possessed for business reasons. The court found that the exception to the exclusion provided coverage because "[s]howing a gun to a friend in such circumstances would not be an activity ordinarily. incident" to the duties of a bail bondsman. *Id.* at 634, 417 *A.*2d 117. *But cf. Carroll v. Boyce,* 272 *N.J.Super.* 384, 390–91, 640 *A.*2d 298 (App. Div.1994) (holding that exception to business-pursuits exclusion for activities ordinarily incident to non-business pursuits did not apply to insured who allegedly had negligently injured infant for whom insured had been providing child care in her home).

Arguably, plaintiffs' alleged failure to maintain the sidewalk, although causally related to prior business pursuits, was not, by its " 'very nature, tainted by being associated with an insured's business pursuits,' " *Brown, supra,* 174 *N.J.Super.* at 633, 417 *A.*2d 117 (quoting *Tilley, supra,* 280 *F.Supp.* at 64), because *Cogliati* liability endures after business activities have ceased. Although *Cogliati* liability is causally related to a business activity because it applies only to commercial premises, it places liability on a predecessor in title after he or she has sold the property and hence has stopped conducting business at the premises. Because that liability arises out of former ownership of a commercial premises, it can be viewed as causally related to business activities, while at the same time remaining an independent obligation imposed by this Court in *Cogliati* that adheres after business activities have ceased.

Many courts have struggled in attempting to interpret the exception to the business-activities exclusion and have found its

language ambiguous. *See Myrtil v. Hartford Fire Ins. Co.*, 510 *F.Supp.* 1198, 1202 (E.D.Pa.1981); *see also Stanley v. American Fire & Casualty Co.*, 361 *So.*2d 1030, 1032 (Ala.1978) ("The provision does not lend itself to clarity, resulting in a split of opinion over whether it is ambiguous, with the consensus being that it is poorly worded."); Lawrence A. Frazier, *The Business–Pursuits Exclusion Revisited*, 1977 *Ins. L.J.* 88, 89 ("[T]he line between what is covered and what is excluded is often difficult to draw with precision in all situations, and frequently the court decisions are in irreconcilable conflict."). Although the reason for American Reliance's adoption of the "activities [that] are not undertaken in relation to business and [that] are .activities otherwise covered here" language in place of the traditional "ordinarily incident to nonbusiness pursuits" language is not clear, that alternative language fails to clarify any of the ambiguity commonly associated with the standard clause. Moreover, I note that the insurance industry apparently has ended its attempt to rely on the exception to the business-pursuits exclusion, and instead generally omits that provision from a homeowner's policy. The current ISO standard homeowner's policies have deleted the exception to the business-activities exclusion for " 'activities [that] are usual to nonbusiness pursuits' " in reaction to the fact that "[o]ver the years, the language of the exception has been described variously as 'unclear' and 'ambiguous' and has been the subject of considerable litigation." National Underwriter Co., *Homeowners Section II Exclusions, Fire Casualty & Sur. Bulletin* (Jan.1995). Accordingly, by removing that provision, the industry apparently believes that that "area of conflict is considerably narrowed to the benefit of insurers and with some possible loss of protection for insureds." National Underwriter Co., *The Business Pursuits Exclusion, Fire Casualty & Sur. Bulletin* (July 1992).

In sum, even if Avila's alleged fall arose out of plaintiffs' business activities, the business-activities exclusion might not apply both because of its temporal ambiguity and because of the homeowner's policy's exception to that exclusion for "activities [that] are not undertaken in relation to business and [that] are

activities otherwise covered here." In any event, sufficient uncertainty surrounds the meaning of that exception to support the conclusion that the insurer's duty to defend surely would be triggered.

## IV

Both the Appellate Division and the majority recognize the "apparent unfairness to the insureds in this case." *Ante* at 401, 661 *A*.2d at 1260. Although "[p]laintiffs had put themselves in the hands of those whom they thought were competent professionals and secured what appeared to be adequate insurance," 273 *N.J.Super.* at 571, 642 *A*.2d 1046, they remain responsible for over $140,000 in legal costs for a claim that they successfully defended. In grappling with that "anomalous result[ ]," *ibid.*, the Appellate Division noted that

[o]ne might imagine that the Fitchburg policy would have a clause to cover occurrences after the transfer [that] implicated plaintiffs' alleged acts while they were owners. It did not. Alternatively, the broker or attorney who did not advise plaintiffs to retain the Fitchburg coverage for a reasonable period following the closing might be liable.

[*Ibid.*]

However, at oral argument, counsel for plaintiffs noted that the insurance industry does not offer policies to cover the liability imposed by *Cogliati* on predecessors in title, an observation that counsel for American Reliance did not attempt to refute. In fact, a Fitchburg executive testified at a deposition that he did not "think there is an insurer in the world that makes that type of policy available, including Fitchburg."

In my view, the two exclusionary provisions, when read in the context of *Cogliati*, do not clearly and unambiguously exclude coverage. Because the *Avila* complaint stated a potentially coverable claim, the duty to defend is triggered. We need not resolve the issue whether American Reliance must indemnify for *Cogliati*-type liability under the policy because plaintiffs successfully have defended the litigation. *See Salem Group, supra,* 128 *N.J.* at 6, 607 *A*.2d 138 ("We hold not that the insurer may ultimately be

liable under the policy, but only that it must honor the duty to defend.").

I would reverse the judgment of the Appellate Division.

Chief Justice WILENTZ and Justice O'HERN join in this opinion.

*For affirmance*—Justices HANDLER, POLLOCK, GARIBALDI and COLEMAN–4.

*For reversal*—Chief Justice WILENTZ and Justices O'HERN and STEIN–3.