

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-19-2008

# Gardner v. State Farm Fire

Precedential or Non-Precedential: Precedential

Docket No. 07-3051

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Gardner v. State Farm Fire" (2008). *2008 Decisions.* Paper 435.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/435

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 07-3051

———

NICOLE GARDNER, as Administratrix of the
Estate of Sharon Ann Gardner, deceased as
Assignee of Kevin Harper,

*Appellant*

v.

STATE FARM FIRE AND CASUALTY
COMPANY

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(Case No. 05-cv-1055)
District Judge: The Honorable Gary L. Lancaster

—————

Argued May 13, 2008

Before: McKEE and ROTH, *Circuit Judges*, and PADOVA,

*Senior District Judge*[*]

(Opinion Filed: July 22, 2008)

Jerome W. Kiger (Argued)
Amy B. Kubisiak
1420 Grant Building
Pittsburgh, Pennsylvania 15219

    *Counsel for Appellant*

C. Leon Sherman (Argued)
C. Leon Sherman & Associates, P.C.
20 Stanwix Street, Fifth Floor
Pittsburgh, PA 15222

    *Counsel for Appellee*
_____

OPINION OF THE COURT
_____

PADOVA, *Senior District Judge*:

    Nicole Gardner ("Appellant") appeals the order of the

United States District Court for the Western District of

_____

    [*]Hon. John R. Padova, Senior District Judge for the
Eastern District of Pennsylvania, sitting by designation.

2

Pennsylvania granting summary judgment in favor of State Farm Fire and Casualty Company ("State Farm"), and denying summary judgment in Appellant's favor. At issue is the District Court's disposition of Appellant's claims arising out of State Farm's refusal to defend or indemnify its insured, Kevin Harper, in connection with negligence claims Appellant asserted against Harper in a state court action. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

I.

Kevin Harper purchased a residence on Sole Street in McKeesport, Pennsylvania (the "Property") sometime in the 1980's. Harper lived at the Property until March 1, 2002, when he moved in with his girlfriend on Scott Street, around the corner from the Property. To maintain the mortgage on the Property, he rented it to Appellant pursuant to a March 1, 2002 written lease agreement. Although the initial term of the lease

3

agreement was six months, Appellant continued to rent the Property until February 1, 2003, when Harper evicted her on account of her failure to keep current on the rent. Meanwhile, on August 29, 2002, Appellant's mother, Sharon Ann Gardner ("Appellant's Mother"), slipped and fell on the sidewalk outside the Property and was injured.

Harper had a Homeowner's Insurance Policy with State Farm (the "Policy"). On March 7, 2003, Appellant advised State Farm of her Mother's fall and resulting injuries. As a result, State Farm conducted an investigation, which included obtaining the statements of Appellant and Harper. Pursuant to that investigation, State Farm learned for the first time that Harper was renting out the Property. On April 4, 2003, State Farm sent a letter to Harper, denying coverage and explaining that the Policy "does not offer coverage for bodily injury when the property is held for rental and is no longer occupied by the

4

insured." App. at A189.

On March 31, 2004, Appellant's Mother passed away. On August 25, 2004, Appellant filed a negligence action against Harper on behalf of her Mother's estate in the Court of Common Pleas of Allegheny County (the "State Court Action"). In a September 10, 2004 letter to Harper, State Farm reiterated that because Harper "held the residence premises for rental and did not occupy any part of it when this accident occurred," it was denying coverage and would not provide him with a defense to Appellant's claims. App. at A195. Appellant obtained an entry of default against Harper in the State Court Action on May 18, 2006, and the court entered judgment against Harper in the amount of $1,664,757.52, plus costs and interest, on June 16, 2006.

On April 8, 2005, Appellant's counsel filed a Praecipe for Writ of Summons in the Court of Common Pleas of Allegheny

5

County, and captioned the case <u>Kevin Harper v. State Farm Fire & Cas. Co.</u>, even though Appellant had not received an assignment of Harper's rights against State Farm and Harper had not authorized Appellant's counsel to act on his behalf. Subsequently, on June 22, 2005, Harper assigned his rights against State Farm to Appellant (the "Assignment"), and Appellant executed the Assignment on June 29, 2005. That same day, Appellant served the Praecipe for Writ of Summons on State Farm. Exactly one month later, on July 29, 2005, State Farm removed the action to federal court. On September 14, 2005, Appellant's counsel filed a Complaint against State Farm, again in Harper's name, and on December 6, 2005, counsel filed a motion pursuant to Federal Rule of Civil Procedure 17 to substitute Appellant, as administratrix of her Mother's estate, as the real party in interest. The District Court granted that motion on December 13, 2005.

Appellant's Complaint in this case asserts six claims: breach of contract, breach of fiduciary duty, negligence, statutory bad faith pursuant to 42 P. S. § 8371, violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (the "UTPCPL"), 73 P. S. § 201-1 *et seq*., and a claim for punitive damages. Appellant's essential complaint is that State Farm breached its contractual and statutory duties to Harper by refusing to defend Appellant's suit against him, failing to indemnify him for the judgment against him, and failing to evaluate the case in good faith. At the completion of discovery, both parties filed motions for summary judgment. The District Court granted State Farm's motion, denied Appellant's cross-motion, and entered judgment in State Farm's favor.

## II.

Appellant asks us to find that the District Court erred in

granting summary judgment in State Farm's favor and denying judgment in her favor.[1]  Our standard of review of a grant of summary judgment is plenary.  See Fed. Home Loan Mortgage Corp. v. Scottsdale Ins. Co., 316 F.3d 431, 443 (3d Cir. 2003).  In reviewing the decision of the District Court, we assess the record using the same summary judgment standard that guides the district courts.  See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000).  To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

III.

---

[1]Although an order denying a motion for summary judgment is not ordinarily final and appealable, it becomes appealable when accompanied by an order granting a cross-motion for summary judgment.  Nazay v. Miller, 949 F.2d 1323, 1328 (3d Cir. 1991).

Appellant first argues that the District Court erred in finding that the Policy afforded Harper no coverage for her claims against him and therefore erred in entering judgment in State Farm's favor on her breach of contract and breach of fiduciary duty claims. This argument is meritless.

In denying coverage for Appellant's claims, the District Court relied on the following exclusion in the Policy, i.e., the "Rental Exclusion."

Section II - Exclusions

1.  Coverage L [Liability] and Coverage M [Medical] do not apply to:

\* \* \*

b.  **bodily injury** or **property damage** arising out of the **business** pursuits of any **insured** or the holding for rental of any part of the premises by any **insured**. This exclusion does not apply:

9

$$* \quad * \quad *$$

  (3)    to the rental or holding for rental of a residence of yours:

    (a)   on an occasional basis for the exclusive use as a residence; . . .

App. at A140.

Appellant argued to the District Court, and continues to argue, that the Rental Exclusion is inapplicable because Harper's rental of the Property was on "an occasional basis" and was therefore subject to the exception set forth in subparagraph (3)(a), the "Occasional Basis Exception." In the alternative, Appellant argues that the Occasional Basis Exception is ambiguous and therefore should be construed in Harper's favor.

Under Pennsylvania law, which the parties agree is

10

applicable here, the "interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court." Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007) (quoting Minnesota Fire and Cas. Co. v. Greenfield, 855 A.2d 854, 861 (Pa. 2004)). "When the language of the policy is clear and unambiguous, we must give effect to the language." Id. (quoting Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 893 (Pa. 2006)). On the other hand, "where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983). Contractual language is ambiguous if "it is reasonably susceptible of different constructions and capable of being understood in more than one sense." Hutchison v.

11

<u>Sunbeam Coal Corp.</u>, 519 A.2d 385, 390 (Pa. 1986).

In rejecting Appellant's argument that the Occasional Basis Exception was either ambiguous or plainly applicable under the circumstances of this case, the District Court considered the definition of "occasional" in the 2003 edition of the Merriam-Webster Dictionary, which is, in relevant part: (1) "of or relating to a particular occasion," or (2) "encountered, occurring, appearing, or taken at irregular or infrequent intervals." App. at A17 (quoting Merriam-Webster's Collegiate Dictionary (Merriam-Webster, 11th Ed. 2003)). The court held that under either of these definitions, coverage was not available for Appellant's claims as Appellant's rental was neither on a particular occasion nor taken at irregular or infrequent intervals. In this regard, the trial court emphasized that Appellant "rented the property continuously for almost one (1) year which is, practically speaking, the entire term of the annually renewable

12

policy." App. at A18. It further stated that requiring coverage under those circumstances would not be reasonable as it would distort the meaning of the Policy language and would "effectively transform a homeowner's insurance policy into a landlord's insurance policy and render the applicable exclusions meaningless." App. at A18.

We agree with the District Court that, under the circumstances of this case, the Rental Exclusion unambiguously excludes coverage and the Occasional Basis Exception is unambiguously inapplicable. Appellant attempts to inject ambiguity into the Occasional Basis Exception by arguing that the rental was on the single "occasion" of Harper's attempting to get caught up on his mortgage, and that it was likewise "infrequent" and "irregular" because it occurred for just an 11-month period over more than 15 years of ownership. However, these arguments rely on unreasonable interpretations of the

13

Occasional Basis Exception.  First, a homeowner's rental of his property in order to finance his mortgage is nothing more than a business pursuit, which is exactly what triggers the application of the Rental Exclusion in the first place and, thus, cannot also be the "occasion" that triggers the Occasional Basis Exception. Second, we reject the assertion that the relevant time period for assessing the infrequency or irregularity of the rental is the length of Harper's ownership rather than the term of the insurance policy, because the Policy addresses only the policy term and plainly anticipates that the norm during that term will be the insured residing at the property, not renting it out.  See, e.g., State Farm Fire & Cas. Co. v. Piazza, 131 P.3d 337, 338 (Wash. App. 2006) (an "'occasional' rental should be interpreted consistent with the purposes of a homeowner's insurance policy . . . which means that the circumstances of the rental must not negate the assumption that the homeowner is still

14

the primary resident of the house, despite his or her temporary absence.")  Thus, where, as here, the term of the policy is one year, an eleven-month rental is anything but infrequent or irregular.[2]  Accordingly, under either definition of "occasional,"

---

[2]Our conclusion in this regard is consistent with other court decisions that have considered the Occasional Basis Exception.  See State Farm Fire & Cas. Co. v. Wonnell, 533 N.E.2d 1131, 1133 (Ill. App. Ct. 1989) (concluding that tenancy was not "irregular" or "infrequent" and, thus, was not on an "occasional basis," where tenant "lived with her children at the home in question, full-time, for at least seven months, without interruption"); Ferguson v. State Farm Fire & Cas. Co., Civ. A. No. 94-36205, 1995 WL 653971, *4 (9th Cir. Sept. 5, 1995) (finding that three-month tenancy, without interruption, was not "irregular" or "infrequent" and, thus, was not on an "occasional basis," where owner moved away, was attempting to sell the house, and did not intended to resume living there, and tenant "only moved out after being given a notice to quit").  Appellant argues that these cases, both of which involved owners who did not intend to return to their premises at the conclusion of the rental, stand for the proposition that the Occasional Basis Exclusion is only inapplicable when the owner has no intention of returning to residence at the rented property.  We do not read the cases to stand for such a proposition.  Although both courts took note that the owners had no intention of returning to the premises at issue, and used that fact to bolster their conclusions that the

15

the Occasional Basis Exception does not apply to save Appellant's claim from the Rental Exclusion.

We also find that the District Court did not err in finding no coverage for Appellant's claims in the State Court Action, because a second exclusion in the Policy, the "Insured Location Exclusion," also precluded coverage. That exclusion provides as follows:

Section II - Exclusions

1. Coverage L [Liability] and Coverage M [Medical] do not apply to:

\* \* \*

d. **bodily injury** or **property**

_____

Occasional Basis Exception did not apply, they did not establish the per se rule that Appellant suggests. Rather, we find that the owner's intention to return is just one additional fact that may be considered in assessing whether a rental is on an occasional basis. Here, in spite of Harper's professed intent to return to residence at the Property, other factors plainly establish that the rental was not on an occasional basis.

16

> **damage** arising out of any premises currently owned or rented to any **insured** which is not an **insured location**. . . .

App. at A140. The Policy defines "insured location," in relevant part, as "the residence premises," and "any part of any other premises . . . used by you as a residence." App. at A126. "Residence premises" is defined as the premises "where you reside and which is shown in the **Declarations**." Id.

Harper simply was not residing at the Property at the time that Appellant's Mother was injured. Under Pennsylvania law, an individual's residence for purposes of an insurance policy is his "factual place of abode," which is "a matter of physical fact." Amica Mut. Ins. Co. v. Donegal Mut. Ins. Co., 545 A.2d 343, 346 (Pa. Super. Ct. 1988). As such, when a person actually lives in one location, and sporadically visits, or keeps certain personal items at, another location, it is the location where he

17

lives that is his residence. Id. (finding that daughter resided with mother, and not with father, when she only sporadically visited father and kept certain personal items at his home.) Here, the undisputed evidence shows that Harper was living on Scott Street with his girlfriend during the Appellant's entire lease term. Appellant nevertheless argues that the Premises remained at least one of Harper's "residences" for purposes of the Policy because he "maintained a close connection with [the Property] by keeping clothing, furniture, a safe and other personal items there, keeping a key and using it to enter the [Property] frequently and without consent, receiving mail there, keeping the utility bills in his name and having the intent to return to [the Property], and actually returning there to live after [Appellant] left." (App. Br. at 20-21). However, under Pennsylvania law, these facts are irrelevant to a determination of Harper's residence. As "a matter of physical fact," he was living not at

18

the Property but, rather, was living on Scott Street. Thus, the Property no longer qualified as an "Insured Location" under the definition of that term in the Policy, and there was no coverage under the Policy for any bodily injury that occurred there.

Appellant argues, in the alternative, that even if State Farm had no duty to <u>indemnify</u> Harper under the Policy, it should have at least <u>defended</u> him in the State Court Action as the duty to defend is determined by the scope of the allegations in the Complaint and, here, the Complaint specifically alleged that the Property was Harper's residence and that he rented it to Appellant on an occasional basis for the exclusive use as a residence. <u>See</u> <u>Frog, Switch & Mfg. Co. v. Travelers Ins. Co.</u>, 193 F.3d 742, 746 (3d Cir. 1999) (stating that to determine the existence of a duty to defend under Pennsylvania law, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of

19

the insured).  However, the law in Pennsylvania is that an insurer need only provide a defense "until it [can] confine the claim to a recovery that the policy [does] not cover." Cadwalleder v. New Amsterdam Cas. Co., 152 A.2d 484, 488 (Pa. 1959) (quoting Lee v. Aetna Cas. & Sur. Co., 178 F.2d 750, 752  (2d Cir. 1949)); Belser v. Rockwood Cas. Ins. Co., 791 A.2d 1216,  1219-20 (Pa. Super. Ct. 2002) (stating that duty to defend remains with the insurer "until it is clear the claim has been narrowed to one beyond the terms of the policy").  The record demonstrates that State Farm investigated the facts underlying Appellant's claims prior to the commencement of the State Court Action and properly concluded that there was no coverage for those claims under the Policy on account of Harper's rental of the Property to Appellant.  In conducting that investigation, State Farm was able to "confine the claim to a recovery that the policy did not cover." Cadwalleder, 152 A.2d

20

at 488. Accordingly, the District Court correctly concluded that State Farm did not violate the Policy by refusing to defend irrespective of Appellant's conclusory allegations in her Complaint in the State Court Action.

IV.

Appellant next argues that the District Court erred in entering judgment in State Farm's favor on her negligence and statutory bad faith claims on statute of limitations grounds. The statute of limitations for both negligence claims and statutory bad faith claims pursuant to 42 Pa. Cons. Stat. Ann. § 8371 is two years. 42 Pa. Cons. Stat. Ann. § 5524; Ash v. Cont'l Ins. Co., 932 A.2d 877, 885 (Pa. 2007); Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 225 (3d Cir. 2005) (predicting that Pennsylvania Supreme Court would apply a two-year limitations period to a statutory bad faith claim). In this case, State Farm

21

sent a letter to Harper on April 4, 2003, denying coverage for Appellant's Mother's bodily injury claim based on the Rental Exclusion, and the District Court therefore concluded that the statute of limitations began to run on that date. See Sikirica (predicting that Pennsylvania Supreme Court would hold the limitations period for bad faith claims would begin to run when coverage was denied.) Approximately two years later, on April 8, 2005, Appellant's counsel commenced the State Court Action against State Farm with the filing of a Writ of Summons in Harper's name. However, as explained above, Harper had not authorized the filing of the action in his name and had not yet assigned his rights against State Farm to Appellant. As he did not assign those rights to Appellant until June of 2005, the District Court concluded that the action was not properly commenced until the Assignment was fully executed on June 29, 2005, more than two years after the April 4, 2003 letter. It

22

therefore found the bad faith and negligence claims to be time-barred.

Appellant takes issue with the District Court's critical conclusion that the action was not "commenced" for statute of limitations purposes until the execution of the Assignment. She specifically argues that Federal Rule of Civil Procedure 15(c)(1) provides that an amendment that changes the party or the naming of the party relates back to the date of the original pleading, so long as the claim asserted arose out of the same conduct, transaction or occurrence set forth in the original pleading, as it did here.

In our view, however, Rule 15(c)(1) is simply not applicable here, as, by its own terms, it applies only to amendments to the "party . . . against whom a claim is asserted," that is, the defendant. Fed. R. Civ. P. 15(c)(1)(C) (emphasis added). Indeed, the Advisory Committee Notes to Rule 15

23

explicitly state that the "relation back of amendments changing plaintiffs is not expressly treated in revised rule 15(c) . . ." and that "the attitude taken in . . . Rule 15(c) toward change of defendants extends [only] by analogy to amendments changing plaintiffs." Advisory Committee Notes on the 1966 Amendments to the Fed. R. Civ. P. 15. The more applicable Rule is Federal Rule of Civil Procedure 17, which provides that "[a]n action must be prosecuted in the name of the real party in interest" and that a court may dismiss an action for failure to prosecute in the name of the real party in interest after affording the real party in interest a reasonable time to ratify, join or be substituted in the action. Fed. R. Civ. P. 17(a)(1), (3). That protection against dismissal "is designed to avoid forfeiture and injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought." 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane,

24

Federal Practice & Procedure, § 1555 (2d ed. 2008).  Thus, it "should be applied only to cases in which substitution of the real party in interest is necessary to avoid injustice."  Id.

Here, Appellant named the "real party in interest" in commencing suit, by filing it in Harper's name.  Fatally, however, she had no authorization to do so.[3]  Thus, in actuality,

_____

[3]Harper's testimony at his deposition on June 12, 2006 was as follows:

> Q:    Now, did [Appellant's two attorneys] ever act as your lawyer?
> A:    No. First time I met them.
> Q:    So you never met either one of them before today?
> A:    No.
> Q:    Is that correct?
> A:    Never.
> Q:    And they have represented to me that neither one of them has ever talked to you about either the coverage case or the underlying case – well, strike that – about the question of your coverage with State Farm or any issue about that.  Is that right?
> A:    What do you mean?
> Q:    That you never talked to them about State Farm

it was she who commenced the suit, not Harper, and she was not yet a real party in interest, because Harper had not yet assigned his rights to her. See FDIC v. Deglau, 207 F.3d 153, 159 n.2 (3d Cir. 2000) ("Federal Rule of Civil Procedure 17 requires that an action involve only the real parties in interest, as determined by transfers *prior* to the initiation of suit.") Under such circumstance, we agree with the District Court that the April

---

> or your policy. Let me ask it this way. Do you recall any conversation you ever had with either one of them?
>
> A:  On the phone.
> Q:  Okay. What do you recall about that conversation, and who was it with?
> A:  Well, just who my insurance was.
> Q:  Okay.
> A:  My insurance carrier.
> Q:  They wanted to find out the name of your insurance carrier?
> A:  That was it.
> Q:  And that was the extent of the conversation?
> A:  That was it. That was the only thing.

App. at A271-A272.

26

2005 filing of the writ of summons did not toll the statute of limitations and, instead, the statute continued to run until Harper assigned his right to Appellant in June of 2005. By that time, however, the statute had expired.

Notably, the United States Court of Appeals for the Ninth Circuit addressed a situation similar to ours in <u>United States ex rel. Wulff v. CMA, Inc.</u>, 890 F.2d 1070 (9th Cir. 1989). In that case, plaintiffs asserted a Miller Act claim against CMA, Inc., a federal contractor, and its surety. Plaintiffs, however, were merely judgment creditors of CMA's subcontractor, which was the real party in interest on the Miller Act claim. At the time that plaintiffs commenced the suit, on September 17, 1986, the subcontractor had not assigned its Miller Act claim against CMA to plaintiffs. Six days later, on September 23, 1986, the one-year statute of limitations on the Miller Act claim expired. On June 2, 1987, plaintiffs obtained the subcontractor's written

27

assignment of its claims against CMA, and plaintiffs immediately amended their complaint to allege this assignment. The Ninth Circuit considered both whether the amended complaint related back to plaintiffs' initial complaint under Rule 15, so as to make it timely under the statute of limitations, and whether the amended complaint could be construed as a specific ratification by the subcontractor of plaintiff's right to maintain the Miller Act claim under Rule 17. In finding that the amended complaint did not relate back, it stated as follows:

> . . . [T]he requirement that a person suing under the Miller Act must have furnished labor or material to the federal construction project is a condition precedent to the existence of the cause of action. This element was lacking when [plaintiffs] filed their original complaint. Therefore, they did not have a Miller Act claim on which they could sue at that time. When they later obtained the assignment from [the subcontractor] the statute

28

> of limitations had run. Thus, . . . the supplemental pleading in which the [plaintiffs] alleged that they had obtained the assignment from [the subcontractor] will not relate back to create a Miller Act claim which the [plaintiffs] did not have when they filed their original complaint.

890 F.2d at 1074. With respect to Rule 17, the Court noted that the Advisory Notes to Rule 17 indicate that the purpose of Rule 17(a)(3) is to "prevent forfeiture of an action when determination of the right party to sue is difficult or when an understandable mistake has been made." Id. (citing Advisory Committee Notes on the 1966 Amendments to Fed. R. Civ. P. 17, and 6 C. Wright and A. Miller, Federal Practice and Procedure § 1555 (1971)). Stating that there was no difficulty and no mistake in determining who was the proper party to bring suit, and that plaintiffs had admitted that they filed suit when they did in order to toll the statute of limitations, the Court

29

reasoned as follows:

> Rule 17(a) does not apply to a situation where a party with no cause of action files a lawsuit to toll the statute of limitations and later obtains a cause of action through assignment. Rule 17(a) is the codification of the salutary principle that an action should not be forfeited because of an honest mistake; it is not a provision to be distorted by parties to circumvent the limitations period. [The subcontractor's] assignment to the [plaintiffs] of its claim against CMA cannot ratify the [plaintiffs'] commencement of suit on a claim which theretofore did not exist.

Id. at 1075.

Applying this same rationale to the instant case, we conclude that Harper's assignment of his claims against State Farm to Appellant after the statute of limitations had run was legally ineffective to save the claims from the statute of

limitations bar.[4] Thus, we affirm the District Court's dismissal of the negligence and statutory bad faith claims on statute of limitations grounds.[5]

---

[4]State Farm has argued that Appellant's action against it was *void ab initio* because Appellant commenced the State Court Action in Harper's name without the authority to do so. Given our disposition of this appeal, we need not rule on that argument. We nevertheless observe that we were very surprised to learn that Appellant's counsel filed the State Court Action in Harper's name without Harper's consent and misrepresented in that filing that they were Harper's counsel. We strongly caution attorneys against engaging in similar conduct in the future.

[5]We also reject Appellant's arguments that (1) the April 2003 letter was not a clear and unambiguous denial of coverage, and (2) that there was no proof that the denial letter was actually mailed and received. Specifically, we find that the plain language of the letter was a clear and unambiguous denial, App. at A190 ("Since you held the residence premises for rental and did not occupy any part of it when this accident occurred, we must deny coverage for this claim."), and the record is clear that the letter was sent and Harper does not deny receiving it. See App. at A41, A71-A72. While we do not know the exact date on which Harper received the letter, the few days of uncertainty are inconsequential given that Harper did not assign his claims to Appellant until more than two months after the statute of limitations had expired,

31

V.

Appellant also argues that the District Court erred in failing to separately analyze her claims that State Farm breached the insurance contract and its fiduciary duties by conducting an inadequate claims investigation, concluding "very early" that the Rental Exclusion applied, without conducting a "complete and objective investigation" that would have uncovered relevant facts and "ignor[ing] the answers that it did receive." According to Appellant, these claims are not contingent on the underlying success of her claims that State Farm breached the insurance contract by failing to provide coverage as they hinge entirely on State Farm's alleged investigatory misconduct.

Even if we were to accept Appellant's premise that her claims based on State Farm's alleged investigatory misconduct

making the precise date on which the statute began to run immaterial to our analysis.

32

can survive our determination that State Farm had no duty to defend or indemnify Harper against Appellant's claims, we conclude that the undisputed record evidence establishes that State Farm breached no duties to Appellant in connection with its investigation. According to Appellant, State Farm should have asked a whole host of questions to more accurately determine Harper's residency, should have obtained Harper's statement under oath, and should have obtained an outside legal opinion regarding the applicability of the Occasional Basis Exception. However, as explained above, State Farm properly denied coverage based on its correct conclusion that the Occasional Basis Exception did not apply, and Appellant cites to no facts that State Farm would have obtained in a more thorough investigation that would have established otherwise. Accordingly, the District Court did not err in granting judgment in State Farms's favor, even insofar as Appellant asserted claims

based on State Farm's allegedly inadequate investigation.

## VI.

Finally, Appellant argues that the trial court erred in granting summary judgment in State Farm's favor on Appellant's UTPCPL claim. As the District Court explained, the UTPCPL is designed to protect the public from fraud and deceptive business practices. Pirozzi v. Penske Olds-Cadillac-GMC, Inc., 605 A.2d 373, 375 (Pa. Super. Ct. 1992). The statute provides a private right of action for "[a]ny person who purchases . . . goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property" on account of the seller's unfair or deceptive acts or practices. 73 P.S. § 201-9.2(a). We have previously explained that "[i]n Pennsylvania, only malfeasance, the improper performance of

34

a contractual obligation, raises a cause of action under the [UTPCPL], and an insurer's mere refusal to pay a claim which constitutes nonfeasance, the failure to perform a contractual duty, is not actionable." Horowitz v. Fed. Kemper Life Assur. Co., 57 F.3d 300, 307 (3d Cir. 1995) (citing Gordon v. Pennsylvania Blue Shield, 548 A.2d 600, 604 (Pa. Super. Ct. 1988)). Here, as the District Court stated, "the undisputed evidence establishes that [State Farm] committed neither malfeasance nor did it improperly perform a contractual obligation." App. at A24. The District Court was entirely correct in that regard; there is no basis in the record or the law for a conclusion that State Farm engaged in malfeasance. We therefore affirm the District Court's decision in that regard as well.

## IV.

We have considered all other arguments made by the

parties on appeal, and conclude that no further discussion is necessary. For the foregoing reasons, we will affirm the District Court's order granting summary judgment in favor of State Farm and denying summary judgment to Appellant.