

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-24-2009

# Deirdre Simon v. Postmaster General

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-3687

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Deirdre Simon v. Postmaster General" (2009). *2009 Decisions.* Paper 1141.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1141

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 08-3687

———————

DEIRDRE A. SIMON,
                                    Appellant

v.

JOHN E. POTTER,
POSTMASTER GENERAL

———————

On Appeal from the United States District Court
for the District Court of New Jersey
District Court  No. 2-04-cv-03752
District Judge: The Honorable Joseph A. Greenaway

———————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 23, 2009

Before: BARRY, SMITH, *Circuit Judges*
and RESTANI, *Judge.*[*]

(Filed: June 24, 2009)

———————

OPINION

———————

SMITH, *Circuit Judge.*

_____

[*] The Honorable Jane A. Restani, Chief Judge of the United States Court of
International Trade, sitting by designation.

1

This appeal involves a claim of disability-based discrimination brought under the Rehabilitation Act of 1973. Deidre Simon sued her former employer, the United States Postal Service,[1] alleging that she was wrongfully terminated from her employment in March 2001 because she was disabled. The United States District Court for the District of New Jersey granted the Postal Service's motion for summary judgment after determining that Simon was not a disabled individual under the Rehabilitation Act and that, even if Simon could qualify as disabled, the Postal Service had terminated her employment for a legitimate and non-discriminatory reason: Simon was frequently absent without leave, sometimes for months at a time. Because the Postal Service terminated Simon's employment for a legitimate and non-discriminatory reason, and the record contains no evidence to create a genuine issue of material fact on this point, we will affirm.

I.

The root of Simon's claim reaches back nearly 20 years to December 1990. At that time, she had been employed by the Postal Service for several years. Simon alleges that, on December 21, 1990, a mail hamper rolled into her and knocked her backwards. She reported the incident five days later, alleging that she had strained her back when she fell and that she had suffered contusions. Simon received lost pay and medical benefits, and did not return to work for more than a year. When she finally returned to work in 1992, she was assigned light duty sorting letters. She remained on light duty for the remainder

---

[1] Defendant, John E. Potter, is the Postmaster General; we refer to defendant as the "Postal Service."

2

of her career with the Postal Service.

On April 27, 2000, the Postal Service issued Simon a notice of removal for failing to report to work without justification. Simon's union responded with a grievance. The Postal Service settled the grievance by agreeing to expunge Simon's notice of removal in exchange for Simon's agreement to submit medical documentation explaining her absences and supporting her contention that she could only work light duty on a reduced schedule. Simon returned to work on June 16, 2000 with a note from Dr. Daisy De Guzman. Dr. De Guzman's note stated that Simon was physically and mentally fit but that she should be assigned light duty tasks and that she should not work more than four hours a day. The Postal Service accommodated these constraints.

Nevertheless, Simon reported to work sporadically over the next few days and then never reported to work again after June 26, 2000. Simon's supervisor, Ricky Lam, sent letters to Simon on July 13 and 14, 2000. These letters requested medical documents to justify Simon's prolonged absence. Lam followed up these letters with a third letter on August 1, 2000, inviting Simon to meet and discuss her situation.

On August 16, 2000, Lam met with Simon and a representative from her union. Simon explained that she was unable to work as a result of the 1990 mail hamper injury. But Simon did not produce any medical documentation to justify her absence. She subsequently obtained another note from Dr. De Guzman, dated August 21, 2000, explaining that De Guzman was treating her for hypertension and depression and that Simon was not able to lift more than ten pounds. De Guzman's note did not state that

Simon was not fit to work, however.

Lam issued Simon a notice of removal on September 8, 2000. Lam's reason for terminating Simon's employment was that she had failed to report to work from July 1 to September 2, 2000 and that she had failed to provide adequate justification for her absence.

In October 2000, Simon's union filed another grievance on her behalf to challenge Simon's latest notice of removal. The union's grievance went to arbitration. On March 8, 2001, the arbitrator upheld the termination of Simon's employment in view of her unjustified absences. The Postal Service terminated Simon's employment on March 8, 2001.

Nineteen months later, on October 15, 2002, Simon filed a complaint in the United States District Court for the District of New Jersey against the Postal Service. The District Court dismissed the complaint on September 16, 2003, but suggested that Simon might amend her complaint to assert a disability discrimination claim under the Rehabilitation Act. In its opinion, the District Court noted that Simon must exhaust administrative remedies, which usually required contacting an Equal Employment Opportunity (EEO) counselor within 45 days of the alleged discrimination. On November 6, 2003, Simon filed an amended complaint asserting a claim under the Rehabilitation Act without having pursued any administrative remedies. The District Court dismissed Simon's complaint on May 5, 2004.

Simon then filed the instant action on August 10, 2004 after the Postal Service's

EEO office rejected her complaint as time-barred. After discovery, the Postal Service moved for summary judgment on three grounds: 1) Simon failed to timely exhaust her administrative remedies; 2) the evidence did not permit an inference that Simon was a person with a disability; and 3) the Postal Service terminated Simon's employment because of her prolonged and unjustified absences and not for an unlawful reason. The District Court rejected the time-bar argument but granted summary judgment based on the second and third grounds. Simon now appeals from the District Court's judgment regarding her status as a person with a disability and the Postal Service's motive for terminating her employment. The Postal Service cross-appeals from the District Court's judgment on Simon's failure to timely exhaust administrative remedies.[2]

## II.

We exercise jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary, and we assess the record using the same summary judgment standard as the District Court. *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 557 (3d Cir. 2008) (citations omitted). Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III.

---

[2] Because we will affirm the District Court's judgment in favor of the Postal Service on the ground that the termination of Simon's employment was legitimate and non-discriminatory, we need not address the merits of the Postal Service's cross-appeal.

The well-known *McDonnell Douglas* burden-shifting framework applies to claims

brought pursuant to Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C.

§ 791. *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007). Under this framework, Simon

has the initial burden to make a prima facie case of discrimination. The Postal Service

must then rebut her prima facie case by articulating a legitimate, nondiscriminatory reason

for terminating Simon's employment. *Id.* If the Postal Service succeeds, the burden shifts

back to Simon to show that the Postal Service's proffered reason was actually only

pretext. *Id.*

> A plaintiff who has made out a prima facie case may defeat a motion for summary
> judgment by either "(i) discrediting the employer's proffered reasons, either
> circumstantially or directly, or (ii) adducing evidence, whether circumstantial or
> direct, that discrimination was more likely than not a motivating or determinative
> cause of the adverse employment action."

*Id.* (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

Assuming that Simon could make out a prima facie case,[3] she nevertheless cannot

show that the Postal Service's proffered reason for terminating her employment was only

pretext. The Postal Service explained that it terminated Simon's employment because she

frequently did not show up to work and she did not present adequate medical

documentation justifying her absences. In particular, Simon did not report to work

between July 1 and September 2, 2000 even though she had been declared physically and

mentally fit by her own physician as recently as June 16, 2000. Moreover, Simon's

---

[3] In making this assumption, we express no view as to whether Simon could make
out a prima facie case, and, in particular, whether she could establish that she has a
disability. *See Wishkin*, 476 F.3d at 184–85.

6

unjustified absence during the summer of 2000 was not new but rather part of a pattern of absenteeism.

Simon argues that the issue of her absenteeism was only a pretext and that the Postal Service actually terminated her employment because she was disabled. To support her argument, she refers to Dr. De Guzman's medical notes from June and August 2000, and an incidental comment her supervisor made when he was deposed for litigation.[4]

The medical notes do not help Simon. Dr. De Guzman's June 16, 2000 note actually undermines Simon's argument. That note states that Simon was physically and mentally fit and indicates that Simon may be assigned light duty. Similarly, Dr. De Guzman's August 21, 2000 note is of no avail to Simon as it does not state that Simon was not fit for work. Rather, it indicates that Simon was under her care for depression and hypertension and that Simon was unable to lift more than ten pounds.

Nor does a comment made by Simon's supervisor during a deposition discredit the Postal Service's reason for termination or suggest that, more likely than not, it was

---

[4] Simon also argues that De Guzman's August 21, 2000 note was *timely* notice to the Postal Service regarding Simon's prolonged absence. Simon makes this argument to suggest that Lam was inconsistent in explaining the reason for terminating Simon's employment. At deposition, Lam explained that De Guzman's August 21 note was inadequate to justify Simon's prolonged absence. He referred to the time lapse between June 27, 2000, when Simon allegedly was first incapable of going to work that summer, and August 21, 2000, when Simon finally went to a doctor to get a note. Lam queried whether someone who was really incapacitated would wait nearly two months before visiting a doctor. Thus, he did not reject the August 21 note as untimely notice to the Postal Service. Rather, he observed that the time lapse tended to diminish the urgency of Simon's incapacity. Regardless of the timeliness of Simon's notice, however, neither the August 21 note, nor the testimony of Postal Service supervisors, creates a genuine issue of material fact as to the Postal Service's motive in terminating Simon's employment.

motivated by a discriminatory intent. In response to a question about what tasks the Postal Service assigned to a person with very limited mobility, Lam referred to the disabled as "cripples." Simon argues that Lam's use of this term reveals discriminatory animus. Simon points to no other incident or speech that could suggest that her supervisor, or anyone else at the Postal Service, was motivated by a discriminatory intent. Lam's response at deposition was to explain how the Postal Service accommodates employees who could not lift, bend, twist, stand, or pull. Although we acknowledge that Lam's comment is clumsy at best and perhaps insensitive, it does not show that Lam was more likely than not motivated by a discriminatory intent.

In reviewing the record before us, we conclude that Simon fails to discredit the Postal Service's reason for terminating her employment. She also fails to adduce evidence that discrimination was more likely than not a motivating or determinative cause of her termination. We will, therefore, affirm the District Court's judgment that the Postal Service terminated Simon's employment for a legitimate and non-discriminatory reason.[5]

---

[5] In view of our determination that Simon's employment was terminated for a legitimate and non-discriminatory reason, we need not address the question of whether she qualifies as disabled for purposes of the Rehabilitation Act.