992 A.2d 804 (2010)
413 N.J. Super. 41
HOMESITE INSURANCE COMPANY, Plaintiff-Appellant,
v.
Susan HINDMAN and (Interested Parties) Mary Romano and John Romano, Defendants-Respondents.
No. A-5103-08T1
Superior Court of New Jersey, Appellate Division.
Submitted March 22, 2010.
Decided April 23, 2010.
*805 Marks, O'Neill, O'Brien & Courtney, P.C., Pennsauken, attorneys for appellant (Sean X. Kelly and Melissa J. Brown, on the briefs).
Stein & Supsie, Forked River, attorneys for respondent Susan Hindman (Angela M. Koutsouris and Christopher Leddy, on the brief). Respondents Mary Romano and John Romano have not filed a brief.
Before Judges LISA, BAXTER and ALVAREZ.
The opinion of the court was delivered by
LISA, P.J.A.D.
The issue in this case is whether either the business or rental exclusions in a homeowner's policy issued by appellant Homesite Insurance Company (Homesite) defeat coverage for the insured homeowner, defendant Susan Hindman. On cross-motions for summary judgment in Homesite's declaratory judgment action, the trial court found that neither exclusion applied and accordingly granted Hindman's motion and denied Homesite's. We agree with the trial court and affirm.
In 1994, Hindman inherited from her mother a single family home in Sea Girt. Hindman took occupancy of the home in 1998. At all relevant times, Hindman was employed as a teacher's aide in a school. In 1998, she took in as boarders a longtime friend and work colleague, Mary Romano, and her newborn son, John Romano. Mary Romano and John Romano remained in the home continuously as boarders until March 6, 2006, when Hindman's dog bit John Romano and injured him. This is the incident for which Hindman sought coverage from Homesite. At the time of the accident, Mary Romano was paying Hindman $300 per month in rent, plus one-half of the utilities. After the accident, Mary Romano and John Romano continued to live with Hindman as boarders.
We provide additional facts regarding other boarders in Hindman's home because they are relevant to the arguments of the parties and the interpretation of the exclusions upon which Homesite relies. In addition to Mary Romano and John Romano, Charissa Cautero was a boarder from 1998 until approximately 2002. Between 2003 and 2004, Ron Kwon was a boarder. Shortly after Kwon moved out in 2004, Marian Henderson moved in; she remained for five months and then moved out before the end of 2004 at Hindman's request for nonpayment of rent. While *806 Henderson was living in Hindman's house, a man named Antonio also lived there for two months; Hindman apparently took him in because he was destitute, and she did not request rent from him, although he insisted on paying her $200 per month. Like Henderson, Antonio also moved out before the end of 2004.
Hindman purchased the Homesite policy that is the subject of this appeal on August 25, 2005. It was a one year policy. Accordingly, throughout the entire time the policy was in effect, Hindman had only two boarders, Mary Romano and John Romano.
As we previously stated, Hindman's dog bit John Romano on March 6, 2006. On March 7, 2008, Mary Romano, on behalf of her son, sued Hindman, seeking recovery for his injuries. On July 15, 2008, Homesite filed a declaratory judgment action against Hindman, seeking a declaration that there was no coverage because by renting the premises Hindman engaged in a business and was therefore barred from coverage under the business exclusion, and that she was also barred from coverage under the rental exclusion.[1] Both parties moved for summary judgment. The court concluded that neither the business exclusion nor the rental exclusion applied. The court therefore granted Hindman's summary judgment motion and ordered Homesite to defend Hindman in the underlying litigation. The court denied Homesite's motion. This appeal by Homesite followed.
The policy contained the following exclusions for business activities and rental:
1. Coverage E  Personal Liability... to Others do[es] not apply to "bodily injury" ...:
....
b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";
c. Arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of an "insured location":
....
(2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders;
The policy defines "business" as follows: "Business" includes trade, profession or occupation.
The interpretation of an insurance contract is a question of law subject to de novo review. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995); Sealed Air Corp. v. Royal Indem. Co., 404 N.J.Super. 363, 375, 961 A.2d 1195 (App.Div.), certif. denied, 196 N.J. 601, 960 A.2d 396 (2008).
When the terms of an insurance contract are clear, courts must interpret the policy as written and avoid writing a better policy for the insured. President v. Jenkins, 180 N.J. 550, 562, 853 A.2d 247 (2004). However, because insurance contracts are contracts of adhesion, when an ambiguity exists courts should interpret the contract in favor of the insured and against the insurer. Id. at 563, 853 A.2d 247; Doto v. Russo, 140 N.J. 544, 556, 659 *807 A.2d 1371 (1995). Courts should examine whether more precise policy language, if chosen by the insurance company, would have "put the matter beyond reasonable question." Doto, supra, 140 N.J. at 557, 659 A.2d 1371. Exclusions in insurance policies must be construed narrowly; the burden is on the insurer to bring the case within the exclusion. Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95, 698 A.2d 9 (1997). However, exclusionary provisions are presumptively valid and will be given effect if specific, plain, clear, prominent, and not contrary to public policy. Ibid.
We first consider Homesite's argument that the business exclusion applies. Homesite urges consideration of this exclusion without regard to the presence in the policy of the rental exclusion. Homesite argues that by renting a portion of the insured premises to boarders on an ongoing basis, Hindman was conducting a business, and that this, standing alone, bars coverage.
This argument is flawed. We will not read one policy provision in isolation when doing so would render another provision meaningless. See Hardy v. Abdul-Matin, 198 N.J. 95, 103-04, 965 A.2d 1165 (2009) ("If we were to read the PIP exclusion to provide a reasonable belief or knowledge requirement on the part of the injured person seeking PIP benefits, we would render those terms meaningless in the UM portion of the policy. We will not do that." (internal citation omitted)); see also Cumberland County Improvement Auth. v. GSP Recycling Co., 358 N.J.Super. 484, 497, 818 A.2d 431 (App.Div.) (commercial contract "should not be interpreted to render one of its terms meaningless"), certif. denied, 177 N.J. 222, 827 A.2d 289 (2003).
If the policy contemplated that a "business," defined as including a "trade, profession or occupation," was meant to include rental of a portion of the insured premises, there would be no need for the rental exclusion in the policy. The basic rental exclusion would be reduced to surplus verbiage under the construction of "business" urged by Homesite. And, the several stated exceptions to the rental exclusion, including the one relevant here, in which a portion of the premises is rented or intended to be rented to not more than two roomers or boarders,[2] would directly conflict with the business exclusion. It would be illogical to construe the business exclusion as prohibiting that which the exception to the rental exclusion specifically permits.
Further, Homesite chose to define "business" as including a "trade, profession or occupation." These terms are not defined in the policy, and therefore should be accorded their ordinary meaning. Fairlawn Indus. v. Gerling Am. Ins. Co., 342 N.J.Super. 113, 117, 775 A.2d 744 (App. Div.2001) ("Generally, the words of an insurance policy are to be given their plain and ordinary meaning."). "Trade" is defined as "the business or work in which one engages regularly: OCCUPATION" or "an occupation requiring manual or mechanical skill: CRAFT." Webster's Ninth Collegiate Dictionary 1250 (1983). "Profession" is defined as "a calling requiring specialized knowledge and often long and intensive academic preparation" or "a principal calling, vocation, or employment." Id. at 939. "Occupation" is defined as "an activity in which one engages" or "the principal business of one's life: VOCATION." *808 Id. at 817. Hindman's trade, occupation and profession was her work as a teacher's aide.
Although we do not suggest that a "business" must constitute an insured's sole or even primary means of livelihood, we doubt that a policyholder would reasonably expect that taking in boarders, while fully employed in a regular occupation, would fit within the common usage definitions of "trade, profession or occupation." We note, in this regard, that some homeowner's policies include within their definition of "business" the rental or holding for rental of all or a portion of the insured premises. See Wickner v. Am. Reliance Ins. Co., 273 N.J.Super. 560, 569, 642 A.2d 1046 (App.Div.1994), aff'd, 141 N.J. 392, 661 A.2d 1256 (1995).
Contrary to the general terms contained in the business exclusion, the terms used in the rental exclusion deal specifically with the conduct engaged in by Hindman upon which Homesite relies in seeking to avoid coverage, namely the rental of part of the insured premises. The rental exclusion is the controlling provision. In addition to our previous analysis of why the business exclusion cannot control the outcome, the rental exclusion also controls because of the well-recognized rule of construction that when two provisions dealing with the same subject matter are present, the more specific provision controls over the more general. See, e.g., Bauman v. Royal Indem. Co., 36 N.J. 12, 22, 174 A.2d 585 (1961) ("In the interpretation of a contractual instrument, the specific is customarily permitted to control the general and this ordinarily serves as a sensible aid in carrying out its intendment."); Burley v. Prudential Ins. Co. of Am., 251 N.J.Super. 493, 500, 598 A.2d 936 (App.Div.1991) ("Where two clauses in a contract clearly conflict, the more specific provision ... usually controls over the more general."). Rental of a portion of the premises could be characterized as a business activity, and thus could be construed as falling within the business exclusion. However, when the insurance contract also contains a more specific exclusionary provision dealing specifically with the rental of a portion of the property, this rule of construction requires that the rental exclusion take precedence over the more general business exclusion.
This brings us to an analysis of the rental exclusion. This particular provision has not been construed in any published New Jersey opinion. The parties have advised, and our research does not reveal otherwise, that the provision has not been construed in a published opinion in any jurisdiction.
The general exclusion precludes coverage for bodily injury "[a]rising out of the rental or holding for rental of any part of any premises by an `insured.'" However, the exclusion contains an exception, by which the exclusion does not apply to the rental or holding for rental of the insured premises "[i]n part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders." (emphasis added). This provision allowed Hindman to rent a portion of the insured premises for residential occupancy without losing coverage, as long as she did not actually rent to more than two roomers or boarders or intend to do so.
At the time of the accident, Hindman had only two boarders, Mary Romano and John Romano. At all times since the inception of the Homesite policy, she had only those two boarders. Homesite argues that because in prior years Hindman had three boarders for much of the time, and four during a two-month period, her "intent" to rent to more than two boarders was established. We reject this argument.
*809 Recognizing that exclusionary provisions should be construed narrowly against the insurer and that the insurer bears the burden of establishing the applicability of the exclusion, Princeton, supra, 151 N.J. at 95, 698 A.2d 9, we hold that the insured's present intent at the time of the accident is dispositive and that in the absence of objective evidence that the insured intended at that time to rent to more than two boarders, intent is not established. At the time John Romano was bitten by Hindman's dog, Hindman did not, for example, have the property advertised for rent to additional boarders, have a "for rent" sign posted on the property, have a real estate agent engaged to find suitable boarders, or do anything else that would manifest an intention to take in one or more additional boarders. Thus, the property was not then held out for rental to more than two boarders.
Indeed, Hindman had not rented to more than two boarders for at least nine months before she purchased the Homesite policy and at least fourteen months before the date of the accident.[3] Perhaps during those earlier years her insurer or insurers did not prohibit more than two boarders, and perhaps, upon becoming insured by Homesite, she took heed of the provisions of the rental exclusion and conscientiously abided by them. We do not know whether such things are so, nor would factfinding in this regard provide the appropriate basis for construing the "intent" element of the rental exclusion. For the reasons we have stated, a narrow construction is appropriate, and, as a result, objective manifestations of the requisite intent at the time of the accident should be required to enable an insurer to invoke the exclusion.
We find unpersuasive Homesite's reliance on Wickner. That case is materially distinguishable in its facts, and its rationale does not favor Homesite. The Wickners resided in one residence, which was covered by a homeowner's policy, and they owned a separate three-family residence, which they never occupied, and which they rented, receiving in 1985 $11,800 in rental income as reported on their tax returns. Wickner, supra, 273 N.J.Super. at 562, 642 A.2d 1046. The rental property was insured by a separate insurance company. After the Wickners sold the rental property, someone tripped and fell on the sidewalk abutting it, and sued various parties, including the prior owners, the Wickners. By then, of course, the Wickners had canceled the policy on the rental property because they no longer owned it.
The Wickners sought coverage from the insurer providing homeowner's coverage on their residence. That policy, however, contained an exclusion for losses arising out of business activities, and its definition of business included "the rental or holding for rental of the whole or any portion of the insured premises by an insured." Id. at 569, 642 A.2d 1046. Although the definition further provided that rental would not be deemed a business if it consisted of rental or holding for rental a portion of the premises "unless for the accommodation of more than two lodgers," ibid., it was undisputed that the Wickners' use of the rental property did not fit within the exception but constituted a "rental enterprise" as defined in the general exclusionary provision in the policy. Id. at 570, 642 A.2d 1046.
In affirming our decision, the Supreme Court found that coverage was properly denied under two exclusionary provisions *810 in the homeowner's policy, namely the unlisted premises exclusion (which has no bearing on the case before us), Wickner, supra, 141 N.J. at 398-99, 661 A.2d 1256, and the business activities exclusion. Id. at 399-401, 661 A.2d 1256. Homesite's reliance on the Court's characterization of the Wickners' rental activity as "clearly a business pursuit," id. at 400, 661 A.2d 1256, in support of its argument that Hindman's rental activity fits within the business exclusion is misguided. In the Wickner case, there was no dispute that the business activities exclusion, including its definition of rental, applied and was not subject to the exception within that exclusion for two or fewer renters. Thus, when the Supreme Court said that "the Wickners' ownership of the [three-family rental] property was clearly a business pursuit," ibid., it was referring to the undisputed fact that this three-family residence was rented to more than two occupants, and therefore, fit within the definition of business (including the rental portion of the definition) in the policy in that case.
In the case before us, it is undisputed that, at the time of the accident and indeed during the entire Homesite policy period, Hindman rented to only two boarders. Therefore, in this case the occupancy level placed the insured within the exception to the rental exclusion, whereas in Wickner, the occupancy level placed the insured within the general exclusion.
We also find unpersuasive Homesite's argument that the rationale undergirding the Wickner decision supports its position. The Supreme Court explained its reasoning this way:
American Reliance and the Wickners contracted specifically for homeowner insurance and coverage of specific personal risks associated with a homeowner's activities. The inclusion in the policy of a business activities exclusion indicates that the policy was not intended to provide the more expansive coverage for risks associated with business or commercial activity. Because the insurer should be liable only for risks bargained for in the insurance contract, coverage for injuries arising out of business or commercial activities should be precluded.
[Id. at 400, 661 A.2d 1256.]
In the case before us, Homesite and Hindman contracted for a homeowner's insurance policy in which one of the risks accepted by Homesite was that arising out of the rental of a portion of the property to one or two boarders. Homesite should be liable for the risks it bargained for in issuing this insurance contract.
We also reject Homesite's reliance on Gardner v. State Farm Fire & Casualty Co., 544 F.3d 553 (3d Cir.2008) (applying Pennsylvania law). Homesite argues that Gardner, in which coverage was not found, is "exactly" like this case. It is not. In Gardner, the property owner moved out of the insured premises and rented it to an individual who remained there as a tenant for eleven months. Id. at 556. During that time, the tenant's mother slipped and fell on the sidewalk outside the property and was injured. Ibid. She brought a claim against the insured. His homeowner's insurer denied coverage under two exclusions in the policy, (1) that the property was held for rental, and (2) that it was no longer occupied by the insured. Id. at 556-57. The court found both exclusions applicable. With respect to the rental exclusion, the only exception referenced by the court and which was at issue in the case was the "occasional basis" exception. Id. at 558. The court held that the occasional basis exception was "unambiguously inapplicable," notwithstanding that this was a rental on a single "occasion" and that it was "infrequent" and "irregular" *811 because it occurred for just an eleven-month period over more than fifteen years of the insured's ownership of the property. Id. at 559.
Consistent with our analysis of the temporal aspect of the "intent" element in the Homesite policy, the court in Gardner
reject[ed] the assertion that the relevant time period for assessing the infrequency or irregularity of the rental is the length of [the insured]'s ownership rather than the term of the insurance policy, because the Policy addresses only the rental term and plainly anticipates that the norm during that term will be the insured residing at the property, not renting it out.
[Ibid.]
The court thus reasoned that "where, as here, the term of the policy is one year, an eleven-month rental is anything but infrequent or irregular." Ibid. (footnote omitted). The court further relied on the "insured location exclusion," which precluded coverage for injury arising out of any premises owned by an insured which is not an "insured location," which was defined, in relevant part, as the premises "used by [the insured] as a residence." Id. at 560. The insured "simply was not residing at the Property at the time that Appellant's Mother was injured." Ibid. Therefore, the exclusion applied. We further note that, in applying this exclusion, the court relied upon the insured's place of residence "at the time" of the accident. This, again, is consistent with our analysis of the temporal aspect of the "intent" element in Homesite's rental exclusion.
Gardner did not implicate any issue dealing with the number of boarders. Although the court characterized "a homeowner's rental of his property in order to finance his mortgage" as "nothing more than a business pursuit," thus triggering the rental exclusion, the court was merely rejecting the insured's argument that this was an isolated and occasional rental to help him catch up on his mortgage and therefore should fall within the occasional basis exception to the rental exclusion. Id. at 559. Homesite's reliance on this passage to support its argument that any rental constitutes a business activity is unfounded.
Affirmed.
NOTES
[1] Hindman filed a counterclaim against Homesite for bad faith in failing to settle with Mary Romano and John Romano. The trial court granted Homesite's motion to dismiss the counterclaim, and Hindman has not cross-appealed from that dismissal.
[2] The rental exclusion also contains exceptions for rental on an occasional basis if used only as a residence and rental of part of the premises as an office, school, studio or private garage.
[3] We need not decide in this case whether actual rental to more than two boarders or objective evidence of intent to rent to more than two boarders during the policy period but prior to the date of the accident would render the exclusionary provision applicable.